The HEARST CORPORATION

v.

SWISS BANK CORPORATION, NEW
YORK BRANCH, and Swiss Bank
Corporation (Canada).

Supreme Judicial Court of Maine.

Argued Oct. 5, 1990.
Decided Jan. 3, 1991.

Daniel Amory (orally), E. William Stock-
meyer, Drummond, Woodsum, Plimpton &
MacMahon, Portland, for plaintiff.

ers engaged in the healing art." We do not find that statute relevant to the case at bar.

William Shumaker (orally), Verrill & Dana, Portland, for defendant.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD, COLLINS and BRODY, JJ.

ROBERTS, Justice.

The Hearst Corporation appeals from a judgment of the Superior Court (Cumberland Co., *Perkins, J.*) upholding an arbitrator's ruling and establishing a monetary award to the St. Raymond Corporation and its successors in interest, Swiss Bank Corporation, New York Branch, and Swiss Bank Corporation (Canada).[1] Because we conclude that the arbitrator's award was not complete and enforceable, we vacate the judgment and remand the case with instruction to remand to the original arbitrator to complete the arbitration award in accordance with this opinion.

From 1947 until October 12, 1988, Hearst owned the Pejepscot Mill on a large tract of land in Topsham. A quarry owned by Harry C. Crooker & Sons, Inc., adjoined the premises. St. Raymond was in possession of the mill premises pursuant to a First Amended Lease and Security Agreement dated December 11, 1987. Under the terms of this lease, St. Raymond had the option during the term of the lease to purchase the premises from Hearst.

Prior to June 1, 1988, Crooker engaged in discussions with both Hearst and St. Raymond regarding expansion of Crooker's quarry onto a portion of the Pejepscot Mill tract. On June 7, 1988, Hearst delivered to Crooker a letter of intent to enter into an agreement to lease mineral rights to Crooker. The letter of intent, however, was expressly "subject to the rights, if any, of the current lessee of the premises." Prior to the execution of the agreement, St. Raymond was informed of the proposed transaction and objected.

On July 28, 1988, Hearst and St. Raymond, with Crooker's consent, agreed that Hearst would enter into an agreement with Crooker (Crooker Agreement) and that Hearst and St. Raymond would arbitrate their dispute according to the Commercial Arbitration Rules of the American Arbitration Association. The parties further agreed that St. Raymond's consent to the Crooker Agreement would not "prejudice any rights" St. Raymond might have "to monies otherwise payable to Hearst." Hearst and Crooker subsequently entered into the Crooker Agreement on August 3, 1988.

Paragraph 3 of the arbitration agreement submitted four issues for arbitration:

(a) Would Hearst be in breach of St. Raymond's right of exclusive control and possession as contained in Paragraph 14 of the First Amended Lease and Security Agreement, by entering into the Crooker Agreement?

(b) Would Hearst be in breach of its obligation to convey the quality of title described in Paragraph 32 of the First Amended Lease and Security Agreement, by entering into the Crooker Agreement?

(c) If the answer to subparagraphs (a) or (b) above is yes, is St. Raymond entitled to receive any of the monies payable by Crooker under the Crooker Agreement before the date of conveyance of title from Hearst to St. Raymond?

(d) If the answer to subparagraphs (a) or (b) above is yes, is St. Raymond entitled to receive any of the monies payable by Crooker under the Crooker Agreement after the date of conveyance of title from Hearst to St. Raymond?

The arbitration hearing concluded May 12, 1989, and the award, due June 11, 1989, was issued on June 8, 1989. It found in favor of Hearst on issue 3(a) and in favor of St. Raymond on issue 3(b). The arbitrator, however, construed the arbitration agreement to require a finding against Hearst on *both* issues 3(a) and 3(b) in order to reach issues 3(c) and 3(d). As a result, he decided not to award money to either party because he had found against Hearst only on issue 3(b). In his transmittal let-

---

**1.** *Swiss Bank Corporation, New York Branch, and Swiss Bank Corporation (Canada) are here-* inafter collectively referred to as "Swiss Bank."

ter, however, the arbitrator said that while he would not make an "opinion and award for issues raised in paragraphs (3)(c) and (3)(d)" he would make a "recommendation for the resolution of those issues, based on the opinion and award for paragraphs (3)(a) and (3)(b)." In this recommendation, he suggested that if and when materials were removed from the premises the royalties, the deposit money and the annual payments due from Crooker to Hearst be paid to St. Raymond. He concluded with an invitation to the parties to "let me know if you would like to meet and iron out an agreement between the parties that would be consistent with my Opinion and Award and the recommendations."

St. Raymond did not file an application to vacate the June 8 decision and request a rehearing under section 5938 of the Uniform Arbitration Act, 14 M.R.S.A. §§ 5927–5949 (1980). Instead, it filed a "Request for Final Award" with the arbitrator on Thursday, September 7, 1989, delivered with a cover letter dated September 12, 1989. These dates were 91 and 96 days, respectively, after the June 8 decision. The request stated that because the parties had been unable to resolve the continuing dispute by agreement, St. Raymond desired the Arbitrator to issue a final award answering subparagraphs 3(c) and 3(d) of the arbitration agreement.

Hearst filed objections to St. Raymond's request on the ground that the arbitrator had not issued a final award within 30 days after the conclusion of the hearing, as required by the Commercial Arbitration Rules. Hearst also objected under section 5935 of the Act on the grounds that, if the June 8 decision did constitute a final award, St. Raymond's "Request for Final Award" was untimely and based upon improper grounds.

In response to St. Raymond's "Request for Final Award" the arbitrator issued an amendment to his June 8, 1989 award on September 25, 1989, stating that if he had interpreted the arbitration agreement "as suggested by St. Raymond" he would have followed the recommendations he set forth in the cover letter accompanying the June

8, 1989 decision. In response to this amendment Hearst filed an Application/Motion to Vacate Arbitration Award pursuant to section 5938 of the Act on December 22, 1989. At this point Swiss Bank entered an appearance as St. Raymond's successor in interest.

Swiss Bank objected to Hearst's Application/Motion to Vacate and made countermotions: 1) to confirm the June 8 decision; 2) to order all funds due from the Crooker Agreement after June 8, 1989 be paid to St. Raymond and its successors; and 3) to order the Crooker Agreement assigned to St. Raymond, its successors and assigns effective June 8, 1989. Swiss Bank did not move to affirm the arbitrator's amendment of September 25, 1988. Hearst objected to Swiss Bank's counter-motion.

After a hearing conducted March 29, 1990, the Superior Court, without comment, ordered:

1) Plaintiff's application to vacate the arbitrator's Opinion and Award of June 8, 1989 is denied;

2) The Opinion and Award of June 8, 1989 is confirmed;

3) Pursuant to the terms of the Arbitration Agreement between the parties, the Crooker Agreement ... is assigned to St. Raymond Corp., its successors and assigns, effective June 8, 1989;

4) Plaintiff shall forthwith pay to St. Raymond Corp., its successors and assigns, all funds paid by Harry C. Crooker & Sons, Inc. to Plaintiff under the Crooker Agreement after June 8, 1989; and

5) All funds due from Harry C. Crooker & Sons, Inc. under the Crooker Agreement shall be paid to St. Raymond Corp., its successors and assigns.

Hearst now appeals the decision of the Superior Court.

I.

 The instant case presents a rather strange procedural history. The arbitrator made a timely, though ultimately confusing, award to the parties on June 8, 1989. The statutory remedy prescribed by the Uniform Arbitration Act for such an ambiguous award would normally have been

either an application for clarification under section 5937 of the Act or a motion to vacate and a request for rehearing under section 5938 of the Act. The parties sought neither remedy. Instead, both parties waited until the time periods for both statutory remedies had lapsed before one of them even attempted to file a motion. This motion, curiously entitled "Request for Final Award," was grounded in neither statute nor case law and was clearly without legal effect. The arbitrator's response to that "request," which he titled an "amendment" was therefore not a legally binding award, and Hearst's December 22, 1989 motion to vacate the amendment, which Hearst treated as an award, was equally invalid. This case is properly before us, however, since the Uniform Arbitration Act sets no time limit for Swiss Bank's application to confirm the award. We therefore address the arbitrator's award as it stood on June 8, 1989.

## II.

■■■ Section 5940 of the Act provides for entry of judgment in conformity with the arbitration award. In previous decisions we have held that "[i]t is a fundamental rule that a judgment [entered on an arbitration award] must be sufficiently clear and definite so that is susceptible of enforcement." *Lisbon School Committee v. Lisbon Educational Association*, 438 A.2d 239, 245 (Me.1981). These decisions demonstrate that the standard of "clarity and definiteness necessary for a court of law to confirm and enter judgment" requires arbitration decisions to be unambiguous and enforceable by their terms. *Sargent v. Town of Millinocket*, 478 A.2d 683, 686 (Me.1984). In the instant case the arbitrator's June 8, 1989 award failed to meet this standard of "clarity and definiteness."

In *Sargent v. Town of Millinocket*, we established the procedure for the judicial disposition of a motion to confirm an incomplete award. In *Sargent*, the Superior Court confirmed an arbitration panel's pecuniary awards and proceeded to assign liability to the parties in the absence of any indication from the panel as to how that liability should have been assigned. In vacating the court's order, we found that the court had impermissibly determined the responsibility of the parties, and held that "the fact that the court found it necessary to add the names of the liable parties to the panel's award in order to confirm it highlights the legal deficiency in the terms of the award in the present case." *Id.* at 686. We concluded that the Uniform Arbitration Act required the court in cases of such a deficiency to remand the case to the arbitration panel in order to achieve a clear and enforceable award *through the arbitration process.*

The facts in this case present a variation on the facts presented in *Sargent.* Unlike many cases that arise from arbitration, the parties to the instant case agreed to arbitration as a method of resolving a dispute that had already arisen. They also agreed that the arbitration was the exclusive method for St. Raymond to enforce its rights. Of necessity, therefore, any award under this arbitration agreement must provide the basis for an enforceable judgment under section 5940 of the Act.

Whereas the arbitration panel in *Sargent* determined the monetary awards but did not assign liabilities to each party, the arbitrator in this case assigned liabilities without determining monetary awards. Despite this factual difference, the procedural history of this case makes clear that the failure to specify a monetary award specifically requested in the arbitration agreement is equally crippling to the clarity and definiteness of the award. In failing to remand this case to the arbitrator for clarification, the court thus improperly "substituted its judgment for that of the [arbitrator] and effectively denied the parties the right to have their disputes settled by the arbitrator[ ]." *Id.* at 686. Swiss Bank was not entitled to monetary benefits not specifically granted by the arbitrator and the court thus erred in awarding them.

■■■ Swiss Bank, however, argues that this decision was correct because, under the terms of the Arbitration Agreement, the arbitrator's June 8, 1989 determination of paragraph 3(b) in St. Raymond's favor

automatically assigned to St. Raymond the Crooker Agreement and all funds due from it. A close reading of the Arbitration Agreement, however, compels the opposite conclusion. In paragraph 6 of the Arbitration Agreement there is explicit language stating that "St. Raymond's sole remedies in enforcing [its] rights shall be arbitration as provided in this agreement." We understand this language to indicate that a monetary award to St. Raymond must be made pursuant to the arbitration process. Moreover, the Arbitration Agreement created ·a complete and enforceable remedy only if answered in its entirety. By deciding only the issues in paragraphs 3(a) and 3(b), the arbitrator left the award incomplete by assigning legal rights without assigning the concomitant monetary benefits and burdens. This failure to answer these issues of monetary obligation, as placed before the arbitrator in paragraphs 3(c) and 3(d), created an award that was incomplete and not susceptible to enforcement.

### III.

■ As we stated in *Sargent,* "under section 5935, the court has the power to submit the award for clarification to, the arbitrator and it must exercise this authority ... to insure that legally enforceable judgments are entered in an award made under the Maine Arbitration Act." *Id.* at 687. Because the arbitrator's award in the instant case was unenforceable as a matter of law, this arbitration award should have been resubmitted to the original arbitrator for a clarification. Hearst argues, without citing authority, that the arbitration should be submitted to a new arbitrator since the old arbitrator is now somehow biased against it. We find no merit in Hearst's contention. Although the original arbitrator has expressed substantive opinions based on the evidence properly presented during the arbitration proceedings, he has not shown any improper bias that would prevent his making fair determination of the issues still requiring resolution. The original arbitrator was chosen by the parties and is, by now, thoroughly familiar with the case. He is best qualified to clarify his own incomplete award.

The entry is:

Judgment vacated.

Remanded to the Superior Court with instruction to remand to the original arbitrator to complete his arbitration ruling of June 8, 1989, in accordance with the opinion herein.

All concurring.