**BUREAU OF EMPLOYEE RELATIONS** *,

v.

**MAINE LABOR RELATIONS BOARD**

and

**Maine State Employees Association, Local 1989, S.E.I.U.**

Supreme Judicial Court of Maine.

Argued Jan. 24, 1995.

Decided Feb. 23, 1995.

Julie M. Armstrong (orally), Bureau of Employee Relations, Augusta, for plaintiff.

Timothy L. Belcher (orally), MSEA, M. Wayne Jacobs (orally), Maine Labor Relations Board, Augusta, for defendants.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

The Maine State Employees Association (MSEA)[1] and the Maine Labor Relations Board (the Board) appeal from a judgment entered in the Superior Court (Kennebec County, *Alexander, J.*) vacating the Board's decision that the Bureau violated section 979–C(1)(A)[2] of the State Employees Labor Relations Act (the Act), 26 M.R.S.A. §§ 979– 979–Q (1988 & Supp.1994), during the second shutdown of state government in July 1991. Because we conclude that the issue presented is moot, we vacate the judgment and

---

* Although the State of Maine was named as the plaintiff in this action, we have recaptioned the case to designate the proper party plaintiff.

1. The Maine State Employees Association, as the certified bargaining agent, represented all the employees of the State in the following bargaining units: Administrative Services; Professional and Technical Services; Law Enforcement Services; Operations, Maintenance and Support Services; and Supervisory Services.

2. 26 M.R.S.A. § 979–C(1)(A) (1988) provides:
   **1. Public employer prohibitions.** The public employer, *its* representatives and agents are prohibited from:

   **A.** Interfering with, restraining or coercing employees in the exercise of the rights guaranteed by section 979–B.

   Section 979–B provides:
   No one shall directly or indirectly interfere with, intimidate, restrain, coerce or discriminate against state employees or a group of state employees in the free exercise of their rights, hereby given, voluntarily to join, form and participate in the activities of organizations of their own choosing for the purposes of representation and collective bargaining, or in the free exercise of any other right under this chapter.

remand to the Superior Court for dismissal of the complaint.

This case was presented to the Board on the following stipulated facts: When the State's operating budget expired at midnight on June 30, 1991, the Governor declared a state of emergency and ordered a shutdown of all state services except for emergency services that directly ensure the public's health and safety. State employees who provided nonessential services were directed not to work.

Thereafter, an interim emergency budget was enacted, effective from July 8 to July 10, that authorized the government to operate for three days to allow continued legislative debate. On July 11, 1991, no budget had been enacted, and the Governor again issued a proclamation closing all nonessential services. The second shutdown of state government lasted from July 11 to July 16. It ended on July 17, 1991, when the Governor signed a new budget. No employee directed not to work received a notice of a layoff before the shutdown, and no other contractual layoff or recall procedure was followed during the shutdown.

By an agreement between MSEA and the Bureau dated August 23, 1991, MSEA waived any right to seek monetary damages arising out of the two shutdowns in July 1991. On December 31, 1991, MSEA filed with the Board a prohibited practice complaint against the Bureau seeking, *inter alia,* a declaration that the Bureau violated the Act and an order from the Board requiring the Bureau to post a notice stating that it interfered with the employees' collective bargaining rights in violation of section 979–C(1)(A) and that it would abide by the layoff and recall provisions of the respective collective bargaining agreements of the employees and the Bureau during any future shutdowns.

By its decision of January 6, 1993, the Board found, *inter alia,* the Governor had violated section 979–C(1)(A) by failing to use the parties' contracted layoff procedures to determine on the basis of seniority which employees would perform essential work during the July 11 to 16 shutdown. Accordingly, the Board ordered the Bureau to cease and

desist from interfering with employees' collective bargaining rights by failing and refusing to abide by contractual layoff and/or recall provisions of negotiated collective bargaining agreements in violation of section 979–C(1)(A); and to distribute a notice to all employees acknowledging the violation and stating that it would comply with the Act in the future. The Bureau has since complied with the Board's order by providing the required notice to its employees.

Thereafter, pursuant to M.R.Civ.P. 80C and 26 M.R.S.A. § 979–H(7) (Supp.1994), the Bureau filed a complaint in the Superior Court seeking judicial review of the Board's decision. The Superior Court concluded that the budgetary emergency excused the Bureau's failure to follow the layoff and recall procedures of the Seniority Article in the collective bargaining agreements and vacated the Board's decision.

■ As we have stated previously, we will not consider moot questions. *International Paper Co. v. United Paperworkers Int'l Union,* 551 A.2d 1356, 1360 (Me.1988). We review for mootness by examining the record to determine "whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources." *State v. Irish,* 551 A.2d 860, 861–62 (Me.1988) (quoting *State v. Gleason,* 404 A.2d 573, 578 (Me. 1979)); *see also International Paper,* 551 A.2d at 1360–61 (action is moot when decision would not provide any real or effective relief). We have recognized three exceptions to the mootness doctrine:

First, the court will determine whether sufficient collateral consequences will result from determination of the questions presented so as to justify relief. Second, while technically moot in the immediate context, questions of great public interest may nevertheless be addressed for the future guidance of the bar and of the public. Third, issues which may be repeatedly presented to the trial court, yet escape review at the appellate level because of their fleeting or determinate nature, may appropriately be decided.

*Irish,* 551 A.2d at 862 (quoting *Gleason,* 404 A.2d at 578).

■ None of the three exceptions to the mootness doctrine are applicable to the circumstances of this case. Rather, the present case presents a situation similar to that in *Bancroft & Martin, Inc. v. Local No. 340, Truck Drivers, Warehousemen & Helpers Union,* 412 A.2d 1216 (Me.1980). In *Bancroft & Martin,* the defendant union appealed from an interlocutory order granting a preliminary injunction enjoining it from blocking access to the premises of the plaintiff's place of business. After the injunction was granted, however, the labor dispute that gave rise to the action had been settled, the union members had returned to work, and there was no reasonable expectation that the events would recur. *Id.* at 1217. We, therefore, dismissed the appeal as moot. *Id.* Similarly, there was no live controversy in this case and there was no remedy the Superior Court could order that would have legal significance. There had been compliance by the Bureau with the relief ordered by the Board, and there was no effective relief that could be provided.

The entry is:

Judgment vacated. Remanded with direction to dismiss the complaint.

All concurring.