1998 ME 92

**John S. NUGENT, III**

v.

**TOWN OF CAMDEN.**

Supreme Judicial Court of Maine.

Argued Dec. 5, 1997.
Decided April 30, 1998.

John C. Bannon (orally), Murray, Plumb & Murray, Portland, for plaintiff.

Terry W. Calderwood (orally), Gibbons & Calderwood, L.L.P., Camden, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, LIPEZ, and SAUFLEY, JJ.

SAUFLEY, Justice.

[¶ 1] John S. Nugent III appeals from the summary judgment entered against him in the Superior Court (Knox County, *Marsano, J.*) on his complaint challenging a parking restriction contained in his 1996 Daysailer License Agreement with the Town of Camden. On appeal, Nugent argues that the Town acted beyond its authority when it regulated his employees' use of the parking lot adjacent to the Town's public landing. Additionally, Nugent argues that the ordinance on which the Town relies is unconstitutionally vague and that the Town violated his rights to equal protection and substantive due process. We disagree and affirm the judgment.

[¶ 2] Nugent owns and operates a commercial daysailer business offering two-hour day trips out of Camden Harbor. A daysailer, as classified by the Town, is a vessel whose sailing voyages do not extend beyond one day. In order to procure a launch site for his daysailer business, Nugent has repeatedly applied for and received yearly licenses for use of the town float. The town float is located near the Town's public landing.[1]

[¶ 3] Parking adjacent to the public landing, with its two-hour time limit, has long been a focus of both concern and study for the Town and its Parking Committee. The Town, however, did not address this concern in its Daysailer License Agreements prior to 1996, instead issuing parking permits to daysailer captains such as Nugent on the informal understanding that they would have their employees park in locations other than the public landing. On November 6, 1995, pursuant to its Harbor and Waterways Ordinance, the Town formally adopted paragraph 5(G) for inclusion in all Daysailer License Agreements to be awarded for the 1996 season.[2]

[¶ 4] Paragraph 5(G) governed daysailer employee parking on the public landing, and provided in pertinent part that:

The Licensee shall prohibit any employee, supplier, contractor, or agent of the licensee, or any crew member of the daysailer vessel, from parking in the parking spaces at the Public Landing, with the exception only of one parking space for one vehicle owned or used by the Licensee, or an employee of the Licensee. It is the intent of Camden to allow the Licensee to use one parking space at the Public Landing for a vehicle to be parked in that parking space during emergencies, for the storage of brochures and other supplies, to provide shelter for employees during inclement weather, and for no other purpose whatsoever. In accordance with Chapter VIII, Schedule 12 of the Parking Ordinance of the Town of Camden, this one parking space is available to the Licensee only during the time that the Licensee operates

---

1. Nearby private floats were also available to Nugent, but at a higher cost.

2. The Town awarded four Daysailer Licenses in 1996.

a vessel from the Town float in accordance with the Harbor and Waterways Ordinance and for the commercial purposes allowed by this license.

. . . .

Any violation of the provision set forth in this subparagraph shall be a cause for termination of this License agreement . . .

[¶ 5] Although Nugent objected to paragraph 5(G), he ultimately signed his 1996 Daysailer License Agreement as written. Nugent then filed a complaint in the Superior Court, pursuant to 5 M.R.S.A. §§ 11001–11007 (1989) and M.R. Civ. P. 80B, seeking review of the Town's adoption of paragraph 5(G). The complaint also sought a declaratory judgment, pursuant to 14 M.R.S.A. § 5954 (1980), that the Town lacked the authority to adopt paragraph 5(G) that paragraph 5(G) violated Nugent's constitutional rights to equal protection and due process. The court dismissed the Rule 80B appeal for want of prosecution and granted a summary judgment to the Town on Nugent's claims concerning the Town's authority and his alleged constitutional violations.[3] This appeal by Nugent followed.

## I. Mootness

[¶ 6] As a preliminary matter, the Town argues that this appeal is moot because Nugent's challenge involves a provision within his 1996 Daysailer License Agreement, that agreement has run its course, and any future agreements between Nugent and the Town will be subject to separate negotiations. The test for mootness is whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources. *See Campaign for Sensible Transp. v. Maine Turnpike Auth.*, 658 A.2d 213, 215 (Me.1995). An exception to this test exists, however, for issues that are capable of repetition yet evade review because of their fleeting or determinate nature. *See id.* Here, Nugent's demonstrated interest in continuing daysailer operations from the town float and the Town's demonstrated interest in regulating parking with respect to such daysailer

operations lead us to conclude that the issue now before us will arise annually in a context that may repeatedly evade review. We therefore reach the issue now.

## II. The Town's Authority

[¶ 7] Nugent argues that neither 38 M.R.S.A. § 7 (Supp.1997) nor the Town's Harbor and Waterways Ordinance authorizes the Town to regulate his employees' parking on the public landing because such regulation has nothing to do with an activity occurring within Camden Harbor. The meaning and construction of statutory language presents a question of law. *See Community Telecomm. Corp. v. State Tax Assessor*, 684 A.2d 424, 426 (Me.1996). The meaning of terms or expressions in an ordinance also presents a question of law. *See Roberts v. Town of Phippsburg*, 642 A.2d 155, 156 (Me.1994). We review such questions de novo. *See H.E. Sargent, Inc. v. Town of Wells*, 676 A.2d 920, 923 (Me.1996).

[¶ 8] Pursuant to 38 M.R.S.A. § 7, a municipality may enact ordinances "to regulate the assignment or placement of moorings and *other activities in their harbors.*" (emphasis added). Accordingly, the Town has enacted its Harbor and Waterways Ordinance, which states in Article I, § II that two of its objectives are "to minimize user conflicts and maximize the efficient use of both the water space and the town-owned waterfront" and "to preserve public access to and use of the Harbors waters." Article V, § III of the Ordinance then authorizes the Town's Board of Selectmen to elect to rent or lease space on the town float, and states that "[i]n reviewing and acting upon an application for a lease or rental agreement, the Board of Selectmen may, among other things, consider . . . the availability of and effect on parking and traffic."

[¶ 9] In addition, the Town has enacted a Parking Ordinance which governs parking in the Town generally. Chapter VIII, Schedule 12 of the Parking Ordinance more specifically authorizes "a permit for one space [on the public landing] for each daysailer using the

---

**3.** Nugent does not press an appeal of the dismissal of his Rule 80B count because the issues

addressed there are identical to those presented in his other counts.

Town floats, when the vessel is in commercial use." Nugent does not dispute the Town's authority to regulate the flow of traffic and parking within its borders. *See State v. Rush,* 324 A.2d 748, 755 (Me.1974). Rather, he contends that the Town may not coordinate its authority to regulate parking with its harbor control authority.

[¶ 10] Nugent, however, points to no authority forbidding a municipality from rationally coordinating its regulatory actions. The Town's authority to regulate daysailers' parking is properly drawn from two ordinances, both of which are fully within the Town's authority to enact. The resulting inclusion of paragraph 5(G) in the 1996 Daysailer License Agreements is consistent with the objectives of the Town's ordinances and well tailored to meet those objectives without overreaching. The court therefore committed no error in granting summary judgment to the Town on Nugent's claim challenging the Town's authority.[4]

### III. Vagueness

[¶ 11] Nugent next argues that Article V, § III of the Town's Harbor and Waterways Ordinance is unconstitutionally vague because it fails to provide sufficient guidance concerning the provisions to be included in Daysailer License Agreements. A municipal ordinance is not unconstitutionally vague where it contains sufficient guidance to allow for effective judicial review and thus protects the individual from arbitrary municipal action. *See Secure Env'ts v. Town of Norridgewock,* 544 A.2d 319, 324 (Me.1988).

[¶ 12] Here, Article V, § III first states that Daysailer License Agreements "shall contain such provisions as the Board of Selectmen deem appropriate and consistent with the best interests of the Town of Camden." The Ordinance then offers factors to be considered in reaching that determination:

In reviewing and acting upon an application for [a Daysailer License Agreement],

the Board of Selectmen may among other things consider:

1. The current uses and users of the facility for which the application applies.
2. The size of the vessel.
3. The number of passengers which the vessel will carry and its schedule.
4. The availability of and effect on parking and traffic.
5. The availability of and need for public facilities.
6. Access to the facility by the vessel.

[¶ 13] This nonexclusive list of factors concerning the Town's best interests provides sufficient guidance for the Board's decision, our review of that decision, and the protection of Nugent's constitutional rights. *Compare id.* at 321–24 (municipal landfill ordinance not unconstitutionally vague where ordinance provided sufficient guidance for determinations concerning the terms "adequate," "properly," and "adversely affected") *with Wakelin v. Town of Yarmouth,* 523 A.2d 575 (Me.1987) (municipal zoning ordinance unconstitutionally vague where ordinance did not provide any guidance for determinations concerning the terms "intensity of use" and "density of development") *and Cope v. Town of Brunswick,* 464 A.2d 223 (Me.1983) (municipal zoning ordinance unconstitutionally vague where ordinance did not provide sufficient guidance for determinations concerning the term "health, safety or general welfare of the public"). Article V, § III of the Town's Harbor and Waterways Ordinance, through its inclusion of specific factors for consideration, provides sufficient guidance for a determination concerning the Town's best interests and is therefore not unconstitutionally vague.

### IV. Equal Protection and Due Process

[¶ 14] Nugent finally argues that the court erred in granting a summary judgment against him on his facial equal protection and due process claims.[5] In ruling on a motion

---

4. Because we conclude that the Town's regulation of daysailer parking on the public landing was a properly authorized governmental action, we need not reach the Town's argument that its action was proprietary and not regulatory in

nature. *Cf. State v. Norton,* 335 A.2d 607, 611 (Me.1975).

5. Nugent also raises as-applied equal protection and substantive due process claims to the inclu-

for summary judgment pursuant to M.R. Civ. P. 56(c), "the court is to consider only the portions of the record referred to, and the material facts set forth, in the Rule 7(d) statements." *Gerrity Co., Inc. v. Lake Arrowhead Corp.*, 609 A.2d 293, 295 (Me.1992). On appeal, we view the evidence in a light most favorable to the appealing party and review the trial court's decision for errors of law. *See Keyes Fibre Co. v. Lamarre*, 617 A.2d 213, 214 (Me.1992).[6]

 [¶ 15] "The prohibition against denial of equal protection of the law to any person is implicated only when action by the state results in treatment of that person [that is] different than that given similarly situated individuals." *Wellman v. Department of Human Servs.*, 574 A.2d 879, 883 (Me.1990). Nugent argues that the Town has violated his right to equal protection by imposing parking restrictions upon daysailer operations but not upon similarly situated windjammers and fishermen operations.

[¶ 16] In his Rule 7(d) statement, however, Nugent has not presented any fact which would support an inference that either windjammers or fishermen are similarly situated to daysailers in their use of the town float and, thus, their impact upon the public landing's parking. To the contrary, Nugent alleges that windjammers are "vessels sailing for longer than one day." Because windjammers make use of the town float in a manner that is different from daysailers, they are not, for purposes of this analysis, similarly situated.

[¶ 17] As for fishermen, Nugent asserts only that "[t]he Town of Camden has reserved 8 parking spaces in the Public Landing for use by fishermen, but does not require the fishermen to ensure that their employees do not park in the Public Landing." Although this statement may bear upon the issue of the Town's respective treatment of daysailers and fishermen, it does not speak to the issue of whether daysailers and fishermen are similarly situated. Because Nugent has failed to raise a genuine issue of material fact concerning whether daysailers are similarly situated to windjammers and fishermen, the court committed no error in granting summary judgment to the Town on Nugent's equal protection claim.

 [¶ 18] Nugent's substantive due process claim is equally without merit. "A substantive due process analysis focuses on the rationality of the enactment, that is, on whether the regulation at issue is in the interest of the public welfare and whether the methods used bear a rational relationship to its intended goals." *Daley v. Commissioner, Dept. of Marine Resources*, 1997 ME 183, ¶ 7 n. 7, 698 A.2d 1053, 1056; *see also Rush*, 324 A.2d at 752–54 (state action does not violate substantive due process where it is rationally related to a legitimate state interest). Concepts of due process require (1) that the object of the Town's exercise of its police powers be to provide for the public welfare, (2) that the legislative means employed must be appropriate to achieve the ends sought, and (3) that the manner of exercising the power must not be unduly arbitrary or capricious. *See Danish Health Club v. Town of Kittery*, 562 A.2d 663, 665 (Me.1989); *State v. Eaton*, 577 A.2d 1162, 1165 (Me.1990).

 [¶ 19] Here, the goals of maximizing the efficient use of the town-owned water-

---

sion of paragraph 5(G) in his 1996 Daysailer License Agreement. There is no evidence in the record, however, that the Town has enforced this provision against Nugent. All that was before the court were the provision itself and the authority and rationale for its adoption. Nugent's as-applied claims therefore require no further discussion.

**6.** Nugent argues that we must review the trial court's decision with "great care" because it adopted the Town's proposed order with only a few minor changes. *See Weeks v. Weeks*, 650 A.2d 945, 946 (Me.1994) ("when a trial court adopts verbatim the proposed findings of a party, we must scrutinize the findings closely to determine whether the court has adequately performed its judicial function."). In the context of a motion for summary judgment, however, the court's function is not to find fact, but rather to determine the existence or absence of genuine issues of material fact based upon a review of the parties' Rule 7(d) statements. The submission of proposed orders and their use by the court in this context is both anticipated by the Rules, *see* M.R.Civ.P. 7(b)(3), and necessary to maximize the use of judicial time.

**250**

front and preserving public access to the Town's harbor fall well within the interest of the public welfare. *See Rush,* 324 A.2d at 753. Further, paragraph 5(G) bears a rational relationship to these intended goals by attempting to mitigate the effect of daysailer-related parking upon the availability of parking spaces at the public landing. Although Nugent bears the burden of proof on this claim,[7] he offers no facts in his Rule 7(d) statement to challenge either the legitimacy of the Town's goals or the rationality of paragraph 5(G) in achieving those goals. Because Nugent did not raise a genuine issue of material fact regarding the Town's rational basis for including paragraph 5(G) in his 1996 Daysailer License Agreement, the court committed no error in concluding that the Town was entitled to judgment as a matter of law on Nugent's substantive due process claim.

The entry is:

Judgment affirmed.

---

7. "In order to successfully challenge the constitutionality of a statute on due process grounds, a party 'must establish the complete absence of any facts that would support the need for its enactment.'" *Eaton,* 577 A.2d at 1166 (citations omitted).