1999 ME 143

**LEWISTON DAILY SUN**

v.

**SCHOOL ADMINISTRATIVE DISTRICT NO. 43.**

Supreme Judicial Court of Maine.

Argued Sept. 9, 1999.
Decided Oct. 18, 1999.

Bryan M. Dench (orally), James E. Belleau, Skelton, Taintor & Abbott, P.A., Auburn, for plaintiff.

Melissa A. Hewey (orally), Drummond Woodsum & MacMahon, Portland, for defendant.

Before WATHEN, C.J., and
CLIFFORD, RUDMAN, DANA,
SAUFLEY, ALEXANDER, and
CALKINS, JJ.

ALEXANDER, J.

[¶ 1] The Lewiston Daily Sun appeals from a judgment of the Superior Court (Androscoggin County, *Studstrup, J.*) finding no violation of Maine's Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 & Supp.1998). The Sun contends that the court erred in determining that the Board of Directors of SAD 43 did not approve an official action when, in executive session, it accepted its attorney's recommendation for an independent investigation of complaints regarding the superintendent of the school district. Because we determine the action is moot, we dismiss the appeal.

[¶ 2] In 1997 and 1998, the Lewiston Daily Sun and the Board of Directors of SAD 43 were involved in a continuing dispute about policy and practice of SAD 43 regarding conduct of business in executive sessions. During this time period, the Board had also been receiving a number of complaints about the performance of its superintendent.

[¶ 3] On March 30, 1998, the Board held a meeting to hear complaints regarding the superintendent's job performance. As required by 20–A M.R.S.A. § 6101(2)(B)(6),[1] but over the newspaper's objection, the March 30 proceedings to receive complaints were conducted in executive session. After the March 30 meeting, the Board determined to ask individuals who had complaints regarding the superintendent to submit the complaints in writing. Fourteen written complaints were forthcoming.

[¶ 4] On April 14, 1998, the Board conducted another meeting, with its attorney present, to consider how to proceed to address complaints against the superinten-

---

1. § 6101. **Record of directory information**
   2. **Access.** The following provisions apply to access of employee records.
   . . . .
   B. Except as provided in paragraph A, information in any form relating to an employee or applicant for employment, or to the employee's immediate family, shall be kept confidential if it relates to the following:

   . . . .
   (6) Complaints, charges of misconduct, replies thereto and memoranda and other materials pertaining to disciplinary action;
   . . . .
   20–A M.R.S.A. § 6101.

dent. As required by 20–A M.R.S.A. § 6101(2)(B)(6) and as authorized by 1 M.R.S.A. § 405(6)(A), (E) & (F),[2] this meeting also was conducted in executive session.

[¶ 5] The trial court found that, at the April 14 meeting, the Board's attorney recommended an independent investigation of complaints, and the Board "agreed to follow the advice of their attorney and investigate the complaints . . . ." The court also found that the actual conduct of the investigation was left in the hands of the attorney, that the Board did not approve any specific individual as the investigator, and "consequently, there was no approval of a contract or expenditure of public funds made during the executive session."

[¶ 6] The next day, April 15, 1998, the Board's attorney engaged another attorney, from a different law firm, to conduct an independent investigation of the complaints regarding the superintendent. The newspaper learned of this action soon afterward and published a story regarding it the following week.

[¶ 7] On May 13, 1998, nearly a month after learning of the events at the April 14 meeting, the newspaper filed a four-count complaint asserting violations of the Freedom of Access Act. The first two counts challenged the March 30 executive session. The third count sought injunctive relief and was a general complaint against past SAD 43 executive session practices.[3] The fourth count asserted that the proceedings which resulted in the Board's attorney engaging another attorney to conduct an independent investigation amounted to an "official action" taken at the April 14 executive session. This was alleged to violate 1 M.R.S.A. § 405(2) which states that: "No ordinances, orders, rules, resolutions, regulations, contracts, appointments or other official actions shall be finally approved at executive sessions."

[¶ 8] During May 1998, the attorney engaged to conduct the independent inves-

---

2. § 405. Executive sessions
   Those bodies or agencies falling within this subchapter may hold executive sessions subject to the following conditions.
   . . . .
   6. Permitted deliberation. Deliberations may be conducted in executive sessions on the following matters and no others:
   A. Discussion or consideration of the employment, appointment, assignment, duties, promotion, demotion, compensation, evaluation, disciplining, resignation or dismissal of an individual or group of public officials, appointees or employees of the body or agency or the investigation or hearing of charges or complaints against a person or persons subject to the following conditions:
   (1) An executive session may be held only if public discussion could be reasonably expected to cause damage to the reputation or the individual's right to privacy would be violated;
   (2) Any person charged or investigated shall be permitted to be present at an executive session if that person desires;
   (3) Any person charged or investigated may request in writing that the investigation or hearing of charges or complaints against him be conducted in open session. A request, if made to the agency, must be honored; and
   (4) Any person bringing charges, complaints or allegations of misconduct

against the individual under discussion shall be permitted to be present.
   . . . .
   E. Consultations between a body or agency and its attorney concerning the legal rights and duties of the body or agency, pending or contemplated litigation, settlement offers and matters where the duties of the public body's counsel to his client pursuant to the code of professional responsibility clearly conflict with this subchapter or where premature general public knowledge would clearly place the State, municipality or other public agency or person at a substantial disadvantage.
   F. Discussions of information contained in records made, maintained or received by a body or agency when access by the general public to those records is prohibited by statute.
   1 M.R.S.A. § 405.

3. The first three counts of the complaint were not considered further by the Superior Court, and are not at issue on this appeal, because they were out of time as filed more than 30 days after the events complained of. M.R. Civ. P. 80(b) requires that such actions "shall be filed within 30 days after notice of any action or refusal to act of which review is sought . . . ."

tigation completed her investigation and filed a report with the Board. The report was received and considered at a May 26 Board meeting. Also on May 26, the Board sent a letter to the superintendent stating its findings and decision regarding the complaint and the superintendent's job performance. Over the superintendent's objection, this letter was made public in accordance with 20-A M.R.S.A. § 6101(2)(C).[4]

[¶ 9] Because the court had appropriately granted the newspaper's request for an expedited hearing, trial on count IV of the complaint commenced on May 27. Most of the Board members present at the April 14 meeting testified. Over the school district's objection, the record was then left open to receive testimony by deposition from Board members who were unable to be present on May 27.

[¶ 10] After receiving briefs and giving the matter due consideration, the court determined that no "official actions" had been taken by the Board during its April 14 executive session and that, therefore, no violation of the Freedom of Access Act had occurred. At the newspaper's request, the court issued further findings in an order dated February 11, 1999. From that order, the newspaper appealed.

[¶ 11] The Freedom of Access Act provides a very narrow choice of remedies in circumstances where violation of its limits on executive sessions are found. Official actions determined to have been taken illegally in executive session may be declared "null and void." 1 M.R.S.A. § 409(2). Officials responsible for such actions may also be subject to civil penalties under 1 M.R.S.A. § 410. However, such penalties may only be sought by the Attorney General or his representative. *See*

*Scola v. Town of Sanford,* 1997 ME 119, ¶ 7, 695 A.2d 1194, 1195. Thus, the only remedy which could result if the newspaper's appeal were successful would be a declaration that the Board counsel's engagement of an independent attorney to conduct an investigation of the superintendent was null and void. All actions relating to or arising from that activity were completed with the Board's receipt of the independent attorney's report, its action on it and issuance of its letter to the superintendent on May 26, 1998. When trial commenced in this matter, it is doubtful that there was any available relief that the court could grant on the newspaper's complaint had it ruled for the newspaper. The possibilities for relief have eroded with the passage of time.

[¶ 12] Courts cannot issue opinions on questions of fact or law simply because the issues are disputed or interesting. Courts can only decide cases before them that involve justiciable controversies. " 'Justiciability requires a real and substantial controversy, admitting of specific relief through a judgment of conclusive character . . . .' " *Halfway House, Inc. v. City of Portland,* 670 A.2d 1377, 1379 (Me.1996) (quoting *Hatfield v. Commissioner of Inland Fisheries,* 566 A.2d 737, 739–40 (Me.1989) *and Connors v. International Harvester Credit Corp.,* 447 A.2d 822, 824 (Me.1982)).

[¶ 13] If a case does not involve a justiciable controversy, it is moot. Here, there is no specific relief which the trial court could have ordered or which this Court can order.

For public policy reasons deeply imbedded in the history and nature of courts, the Law Court decides only questions of live controversy, and not

---

4. **§ 6101. Record of directory information**

. . . .

2. Access. The following provisions apply to access of employee records.

. . . .

C. Any written record of a decision involving disciplinary action taken with re-

spect to an employee by the governing body of the school administrative unit shall not be included within any category of confidential information set forth in paragraph B.

20–A M.R.S.A. § 6101(2)(C).

hypothetical, abstract or moot questions. The demands upon this Court are too heavy for it to commit any of its limited resources of time and effort to reviewing the legal correctness of action below at the behest of a person to whom our decision in no alternative will make any real difference.

*Halfway House, Inc.,* 670 A.2d at 1380 (quoting *Sevigny v. Home Builders Association,* 429 A.2d 197, 201 (Me.1981)).

■ [¶ 14] When mootness is an issue, we examine the record to determine " 'whether there remain sufficient practical effects flowing from the resolution of [the] litigation to justify the application of limited judicial resources.' " *Bureau of Employee Relations v. Labor Relations Board,* 655 A.2d 326, 327 (Me.1995) (quoting *State v. Irish,* 551 A.2d 860, 861–62 (Me.1988)).

[¶ 15] In Freedom of Access Act litigation, we have addressed the merits of an issue that was resolved prior to hearing because public records were disclosed to the plaintiff only after suit was filed and because the plaintiff, as prevailing party on a Freedom of Access issue, was entitled to recovery of costs. *See Cook v. Lisbon School Committee,* 682 A.2d 672, 680 (Me. 1996). However, *Cook* presented very different issues from this case. In *Cook,* the plaintiff, in litigation which raised many issues, sought and was originally denied access to public documents. After filing suit, the documents at issue were turned over to Cook. Although this aspect of the larger controversy had been resolved by the time it reached the Superior Court, we held that:

It would be contrary to the purposes of the Freedom of Access Act to permit a governmental body to avoid the payment of court costs for a violation of the Act merely by producing the improperly retained documents after the requesting party had undertaken the additional time and expense of filing an appeal of the denial in the Superior Court. *Id.*

[¶ 16] There is no such entitlement to costs or any other remedy here. Suit was filed nearly a month after disclosure of the events at the executive session, and the great bulk of the litigation in which the newspaper engaged; trial in the Superior Court, development of the record and briefing in the Superior Court, and this appeal occurred after any opportunity for relief had passed. Because there is no "real and substantial controversy, admitting of specific relief through a judgment of conclusive character," *Halfway House, Inc.,* 670 A.2d at 1379, this case is moot.

■ [¶ 17] While the mootness doctrine generally bars review of cases that do not present a justiciable controversy, there are three exceptions to the mootness doctrine which may justify addressing the merits of an issue if:

(1) Sufficient collateral consequences will result from the determination of the questions presented so as to justify relief;

(2) the appeal contains questions of great public concern that, in the interest of providing future guidance to the bar and the public we may address; or

(3) the issues are capable of repetition but evade review because of their fleeting or determinate nature.

*Halfway House, Inc.,* 670 A.2d at 1380; *Foster v. Bloomberg,* 657 A.2d 327, 329 n. 1 (Me.1995); *In re Faucher,* 558 A.2d 705, 706 (Me.1989). None of these exceptions to the mootness doctrine justify judicial intervention in this case. In fact, prudential considerations of judicial restraint argue against our addressing the merits of the issue presented here.

[¶ 18] On sensitive issues of complaints about employees and employee discipline, there is a delicate tension between the confidentiality mandate of 20–A M.R.S.A. § 6101(2)(B) and the limitations on executive sessions imposed by 1 M.R.S.A. § 405. The issue of the application of section 6101 was not addressed in the trial court's rulings or in the newspaper's briefing of the

issues to the trial court or this Court. Ruling on the issue of applicability of the limitations on executive sessions in section 405, in a case where there remain no practical consequences that can flow from such a ruling and where the record is undeveloped regarding the competing confidentiality mandate of section 6101, would be particularly inappropriate. In looking at the exceptions to the mootness doctrine, we could not reasonably provide future guidance to the public and the bar on this issue by ruling here and, beyond those consequences which had already occurred by May 26, 1998, no other collateral consequences can flow from the challenged Board actions or rulings by this Court.

[¶ 19] At oral argument, counsel for the newspaper asserted that ruling is needed because their ongoing controversy with SAD 43 indicates that the issue of confidentiality of executive sessions is one that is capable of repetition. However, each such event is heavily fact specific. Notably, one of the executive sessions identified as creating the basis for repetition of the problem is the March 30, 1998, executive session to hear complaints. Hearing complaints in executive session appears to have been mandatory if the provisions of 20–A M.R.S.A. § 6101(2)(B)(6) were to be respected.

■ [¶ 20] The newspaper's complaint includes a claim under the Declaratory Judgments Act, 14 M.R.S.A. §§ 5951–5963 (1980 & Supp.1998). However, the Uniform Declaratory Judgments Act does not present an exception to the justiciability rule. It may be invoked only where there is a genuine controversy. *See Patrons Oxford Mut. v. Garcia*, 1998 ME 38, ¶ 4, 707 A.2d 384, 385; *Wagner v. Secretary of State*, 663 A.2d 564, 567 (Me.1995).

[¶ 21] When tried this case was moot, and on appeal this case is moot.

The entry is:

Appeal dismissed.

CALKINS, J., with whom DANA and SAUFLEY, JJ., join, dissenting.

[¶ 22] I respectfully dissent.

[¶ 23] The appeal is not moot.[5] " 'The test for mootness is whether there remain sufficient practical effects flowing from the resolution of the litigation to justify the application of limited judicial resources.' " *Maine Civil Liberties Union v. City of South Portland*, 1999 ME 121, ¶ 8, 734 A.2d 191, 194 (quoting *Nugent v. Town of Camden*, 1998 ME 92, ¶ 6, 710 A.2d 245, 247).

[¶ 24] There remains a live case or controversy between the Lewiston Daily Sun and the Board of Directors of SAD 43 as to whether an official action was taken at the executive session of the Board on April 14, 1998. Even when an executive session is permitted under the Freedom of Access Act, 1 M.R.S.A. §§ 401–410 (1989 and Supp.1998), "official actions" may not be taken during executive sessions. *See* 1 M.R.S.A. § 405(2) (1989). "Official action" is not defined in the statute. Official actions taken during executive sessions are illegal and are subject to an order that they are null and void. *See* 1 M.R.S.A. § 409(2) (1989).

[¶ 25] The action of the Board in this case, as found by the trial court, was the reaching of a consensus or agreement by the Board members during the executive session to investigate further the complaint regarding the superintendent.[6] The Board's agreement resulted in the hiring

5. Neither party raised or briefed the issue of mootness in either the Superior Court or this Court. The Superior Court did not discuss mootness although the posture of the case is no different in this Court than it was at the time the record was closed in the Superior Court.

6. The trial court made a legal conclusion that an "official action" was not taken at the executive session. The court, however, expressly found: "The consensus [of the Board], without any formal vote, was to follow the advice of their attorney and have further investigation conducted."

of a second attorney to do the investigation. The second attorney made a report to the Board and billed SAD 43 approximately $10,000 for her services. There is a case or controversy as to whether this action taken by the consensus of the Board was the type of "official action" that is prohibited during executive session. If it is an official action, it can be declared null and void pursuant to section 409(2). The practical effect of an order declaring the action null and void is to undo it, which in this case would be to invalidate the hiring of the second attorney and void the authorization to pay her for her services. This would require the Board to revisit the issue in a manner that conforms to the letter and spirit of the Freedom of Access Act. This is a sufficient practical effect to avoid a mootness dismissal.

[¶ 26] The Court concludes that because the second attorney was in fact hired and completed her report, which the Board acted upon, there is now no practical relief that can be granted. This conclusion is contrary to our holdings in *Cook v. Lisbon School Committee*, 682 A.2d 672 (Me.1996) *and Campbell v. Town of Machias*, 661 A.2d 1133, 1135 (Me.1995). In those cases we refused to find that the governmental entities' actions in providing the requested records to the plaintiffs after the court action was filed made the lawsuits moot. This appeal is not rendered moot simply because the official action was completed by the time the trial was held.

[¶ 27] By holding that this appeal is moot, we are telling governmental entities that as long as the work authorized by their actions in executive session is completed, they cannot be sanctioned for taking such actions unless the Attorney General seeks the statutory penalties in a civil violation complaint. This result substantially debilitates the Freedom of Access Act. Because I conclude that the statutory remedy of declaring illegal actions null and void is sufficient to raise a justiciable controversy, I would reach the merits of this appeal.