STATE OF MAINE
CUMBERLAND, ss.

SUPERIOR COURT
Civil Action No. RE-00-015
RAC - CUM - 3/14/2002

V.I.P., Inc.,                      )
        Plaintiff                  )
                                   )
v.                                 )        **ORDER AND DECISION**
                                   )
FIRST TREE DEVELOPMENT,            )
LLC,                               )
        Defendant                  )

This matter is before the court on the defendant's motion for relief from order of
attachment, and the defendant's motion to dismiss and/or for summary judgment. For the
following reasons, the motion for relief from order is denied, and the motion to dismiss
and/or for summary judgment is denied in part and granted in part.

The parties own adjacent commercial real estate, and share a common easement,
on Waterman Drive in South Portland. In October 1995, the predecessors in title of the
parties executed a Reciprocal Deed Granting Cross-Easements (the "Agreement") for the
common easement area. The Agreement grants contiguous reciprocal easements to the
parties over a discontinued public way that crosses both parcels and connects with a
public road, and establishes the respective rights and obligations relating to construction
in and care of the easement area. Paragraph 3 of the Agreement states:

> Either party may, at their own expense, improve the Easement Area with paving,
> curbing and other entryway and roadway related improvements, so long as such
> improvements do not unduly limit access from Waterman Drive through the
> Easement Area to the property of the other party and are approved in advance by
> the other party, such approval not to be unreasonably withheld. Either party may,
> at their own expense, have snow removed from the Easement Area. Once
> improvements are constructed as aforesaid, the parties shall share equally in the
> cost of maintenance of the Easement Area and maintenance, repair and
> replacement of the improvements therein, so long as the other party has been
> given reasonable notice of the same and the opportunity to object. In the case of
> such an objection, the parties will negotiate in good faith to reach agreement on
> planned maintenance, repair or replacement, and if no agreement is reached shall
> arbitrate their dispute in an expeditious and cost effective manner, with the costs
> of arbitration shared equally.

In 1999 VIP, pursuant to paragraph three, sought First Tree's consent to VIP's
construction of a Coastal Bank branch, with a drive-in and ATM machine, within part of

the easement area (the "Coastal Bank project"). First Tree objected to the Coastal Bank project because, according to First Tree, the bank would create traffic access problems for the Blockbuster Video on its property. VIP states that this objection was unreasonable and a violation of the Agreement, and contends that First Tree used economic coercion to interfere with the business relationship between VIP and Coastal Bank in order to divert financial benefits from the project to itself. Moreover, VIP asserts that although First Tree claimed traffic concerns as the reason for withholding approval, it did not conduct a traffic study until March 2000, months after originally objecting to the project.

Thus, in January 2000 VIP filed this action, alleging that First Tree, by unreasonably withholding consent to the proposed improvements by VIP, violated its obligations under the Agreement and is causing irrevocable harm to VIP in its attempt to finalize a land lease with its prospective lessee (Count I); that First Tree's refusal to submit its dispute with VIP over the proposed improvements to arbitration constitutes a violation of its obligations under the Agreement (Count II); that First Tree has used coercion or intimidation to interfere with VIP's prospective business advantage, namely its prospective leasehold relationship with Coastal Bank (Count III); that First Tree has breached the Agreement by constructing, partly on its own land and partly on a portion of VIP's land which is subject to the easement set forth in the Agreement, a granite curb and parking area (Count IV); and that First Tree's improvements unreasonably interfere with VIP's right of passage over First Tree's land granted to it in the Agreement (Count V).

On February 24, 2000, the court (Mills, J.) ordered the parties to submit their disputes to arbitration and stayed the proceedings until the arbitrator rendered a decision. In a decision dated May 12, 2000, the arbitrator found in favor of VIP, who then filed an application to this court to confirm the arbitration award. First Tree then followed with an application to vacate the award. The court (Mills, J.) entered judgment confirming the award. Consequently, First Tree appealed to the Law Court on November 16, 2000.

On December 15, 2000, while the decision was on appeal, VIP moved for approval of attachment on trustee process. The Superior Court did not act upon this motion until after the Law Court issued its decision on the appeal (which was issued May 23, 2001, and upheld the arbitrator's decision and court's confirmation). Subsequently,

2

on June 21, 2001, the court (Mills, J.) issued an order approving VIP's request for real estate and personal property attachment including attachment on trustee process. One of the reasons the court allowed the motion was because First Tree did not file an objection. Subsequently, on August 1, 2001, the court (Mills, J.) granted First Tree's Motion for Substitution of Bond for Attachment.

On August 22, 2001, First Tree filed a motion for relief from order of attachment pursuant to M.R. Civ. P. 60. In the motion, First Tree asks that the court vacate the June 21st order. First Tree has also filed a motion to dismiss and/or for summary judgment with respect to VIP's Counts I and II, and for summary judgment with respect to Counts III, IV and V of VIP's complaint.

## DISCUSSION

### A. Motion for Relief from Attachment

First Tree makes three arguments in support of its motion for relief from attachment. First, to the extent that it is based on Count I, the order of attachment is void under M.R. Civ. P. 60 (b)(4) because the parties fully and finally litigated Count I in front of the arbitrator and the court, therefore, has no jurisdiction to enter additional, substantive relief. First Tree argues that VIP claimed in Count I that First Tree had "violated its obligations under the [Agreement]," and sought a declaratory judgment, injunctive relief, and damages. At the same time, VIP sought an order compelling arbitration, stating that the Agreement "contained a binding arbitration clause of the resolution of disputes arising out of the construction, repair, replacement, improvement and maintenance . . . relating to the reciprocal easements." The court ordered the parties to submit their dispute to arbitration, and the arbitrator found that First Tree had unreasonably withheld its consent to the proposed improvement. The arbitration award was then confirmed and entered as judgment by the Superior Court, and affirmed by the Law Court. See V.I.P., Inc. v. First Tree Development, LLC, 2001 ME 73, 770 A.2d 95.

Under M.R. Civ. P. 60 (b)(4), "the court may relieve a party . . . from final judgment, order, or proceeding [when] . . . the judgment is void." "A challenged judgment is either valid or void and thus a motion for relief pursuant to M.R. Civ. P. 60 (b)(4) is not subject to the discretion of the court." Boyer v. Boyer, 1999 ME 128, ¶ 6, 736 A.2d 273, 275. In order to determine whether the attachment, as it pertains to Count

3

I, is void, the court must determine whether the remainder of Count I is a viable claim. This court will, therefore, merge the discussion of First Tree's motion to dismiss Count I into the discussion of this issue.

" 'Claim preclusion' prohibits relitigation of an entire cause of action." Camps Newfound/Owatonna v. Town of Harrison, 1998 ME 20, ¶ 11, 705 A.2d 1109, 1113. "The 'claim preclusion' arm of res judicata bars the relitigation of a claim if the same parties or their privies are involved in both actions, there is a final judgment in the first action, and the 'matters presented for decision in the second action were, or might have been, litigated in the first action.'" Draus v. Town of Houlton, 1999 ME 51, ¶ 6, 726 A.2d 1257, 1259, quoting Camps Newfound/Owatonna, 1998 ME 20, ¶ 13, 705 A.2d at 1113. In addition "[r]es judicata prevents a litigant from splitting the litigant's claim and pursuing it in a piecemeal fashion by asserting in a subsequent lawsuit other grounds of recovery for the same claim that the litigant had a reasonable opportunity to argue in the prior action." Id., quoting Kradoska v. Kipp, 397 A.2d 562, 569 (Me. 1999).

In this case, there is no dispute that the same parties involved in the arbitration are also involved in this action. Moreover, there was a final judgment in the first action. The arbitrator's decision was adopted by the Superior Court and upheld by the Law Court. As for the third requirement, however, the matters presented in this action were not, and could not have been, litigated in arbitration. The only issues before Arbitrator DeTroy were "first, whether the dispute between the parties is arbitratable [sic] and, if so, whether the plaintiff's proposed use of the easement area is appropriate and consistent under the provisions of Paragraph 3 of the [Agreement]." The issue of damages was not before the arbitrator. Cf. Hearst Corp. v. Swiss Bank Corp., New York Branch, 584 A.2d 655, 658 (Me. 1991) (party not entitled to monetary benefits not specifically granted by the arbitrator, and Superior Court erred in awarding monetary benefits, where parties specifically submitted the question of monetary damages to the arbitrator). Thus, although DeTroy's decision that First Tree's objection was unreasonable is subject to the doctrine of claim preclusion, the issue of damages resulting from First Tree's objection is not. The issue of damages was not presented to Arbitrator DeTroy and he did not consider it. The order for attachment is not, therefore, void under M.R. Civ. P. 60 (b)(4) in as far as it pertains to Count I on this basis. Likewise, First Tree's motion to dismiss

4

or for summary judgment on Count I is denied as it pertains to damages only. It is allowed as to the other parts of Count I.

Second, First Tree argues that the motion for attachment was improperly filed, and, under M.R. Civ. P. 73 (f), the court should not have acted upon it.[1] VIP concedes that the court maintains no jurisdiction to act on most aspects of a case while interlocutory appeal is pending, but argues that it does not follow that motions filed during the pendency of an appeal are void *ab initio*. VIP asserts that although the Superior Court acted properly by refraining from ruling on VIP's attachment motion until certification of the Law Court's decision, neither Rule 73 (f) nor controlling case law prevented either party from filing motions with the court during the stay. The court agrees with VIP.

"*The Superior Court shall take no further action* until after certification of disposition of the appeal in the Law Court . . . ." M.R. Civ. P. 73 (f) (emphasis added). Rule 73 (f) states that the *court* cannot take further action, but does not prohibit parties from filing motions. See Key Bank of Maine v. Walton, 673 A.2d 701, 703 n.2 (Me. 1996) (Law Court held that Superior Court should not have acted upon a Rule 60 (b) motion while appeal was pending, but alluded to no error by the parties in filing the motion). Accordingly, VIP did not improperly file the motion and the court did not err in acting upon it. First Tree's motion is, therefore, denied on this basis.

Third, First Tree claims that its failure to file an opposition to the motion for attachment was excusable, and because the court's order was based, in part, on First Tree's failure to file an opposition, the court should use the standard used for a default judgment. First Tree argues that it has good excuse for its failure to file a response; the confusion generated by the convoluted procedural history of the case caused First Tree's failure and is considered "excusable neglect." Furthermore, when considering other factors, namely the existence of any substantial prejudice to any parties not in default, the

---

[1] In the order, the court noted that First Tree failed to object to the motion for attachment. First Tree argues that when VIP asked the court for a hearing on the motion for attachment on June 8, 2001, it re-filed the motion. Accordingly, because of that re-filing, the court improperly granted the motion before the 21-day response period had expired, and the court should now allow First Tree to file an opposition to the motion for attachment. This argument disregards what it means to "file" a motion. By asking the court for a hearing on the matter, VIP did not re-file its motion for attachment.

5

amount of money involved, the good faith of the parties, and the timing of the motion, First Tree argues its failure should be considered "excusable neglect."

Under M.R. Civ. P. 4A (h), any person having an interest in property that has been attached may move to dissolve or modify an attachment in one of two ways:

(1) any person having an interest in property that has been attached pursuant to an ex parte order entered under M.R. Civ. P. 4A (g) may appear and move the dissolution or modification of the attachment, and in that event the court shall proceed to hear and determine such motion;

(2) upon motion and notice and a showing by any defendant that specific property or sufficient cash or bond is available to satisfy a judgment, the court may modify an order of attachment.

The defendant fits into neither of these categories.

Assuming, without deciding, that the default judgment rule applies here, First Tree has not shown that its failure to file was due to "excusable neglect." The standard for determining an excusable neglect defense is a strict one and can be met only when there are extraordinary circumstances that work an injustice. Gregory v. City of Calais, 2001 ME 82, ¶ 7, 771 A.2d 383, 387. A mere palpable mistake by counsel or counsel's staff does not constitute excusable neglect. Id. at ¶ 8. First Tree's counsel, through inattention to the deadline for filing an objection or as a result of a mistaken belief as to the law, failed to file a timely opposition. First Tree has stated no satisfactory reason why its failure to file should be considered "excusable neglect." First Tree's motion is denied on this basis.

Moreover, as VIP argues, First Tree waived its right to challenge the attachment by failing to appeal. The granting, denying, or dissolving of an attachment constitutes an exception to the final judgment rule and is immediately appealable. Foley v. Jacques, 627 A.2d 1008, 1009 (Me. 1993). Collateral orders must be reviewed by direct appeal within 30 days of the entry of the order, and failure to file an appeal within 30 days of the entry of the order forecloses appeal. Nynex Worldwide Services Group v. Dineen, 1999 ME 166, ¶ 6, 740 A.2d 568, 570.

### B. Motion to Dismiss and/or for Summary Judgment

#### 1. Count II

In Count II, VIP alleges that First Tree's "refusal to submit its dispute with [VIP]

over the proposed improvements to arbitration constitutes a violation of its obligations under the [Agreement]." As a result, VIP requested that the court issue an order compelling arbitration, issue an order staying this lawsuit pending the outcome of arbitration, and grant any other relief it deems just and proper.

First Tree argues that Count II is moot, and thus should be dismissed under either M.R. Civ. P. 12 (b) or 56, because it seeks enforcement of the parties' agreement to arbitrate. This court ordered arbitration and this matter has since been to an arbitrator. VIP, on the other hand, essentially argues that the court may still award damages resulting from First Tree's failure to arbitrate.

"Courts can only decide cases before them that involve justiciable controversies." Lewiston Daily Sun v. School District No. 43, 1999 ME 143, ¶ 12, 738 A.2d 1239, 1242. "Justiciability requires a real and substantial controversy, admitting of specific relief through a judgment of conclusive character." Id. (citations and quotations omitted). "If a case does not involve a justiciable controversy, it is moot." Id.

The court agrees with First Tree in that the substance of this claim has been addressed, and any damages resulting from First Tree's failure to arbitrate, if any, can be addressed under what remains of Count I. First Tree's motion is allowed as to Count II, and Count II is, therefore, dismissed.

## 2. Count III

First Tree argues that because Count III alleges interference with an advantageous business relationship, it should be dismissed, as Maine does not recognize that tort. To the contrary, Maine does recognize the tort of interference with an advantageous relationship, under which VIP must show (1) it had a valid contract or prospective economic advantage, (2) First Tree interfered with that contract or advantage through fraud or intimidation, and (3) the interference proximately caused VIP's damages. Northeast Coating Technologies, Inc. v. Vacuum Metalurgical Co., Ltd., 684 A.2d 1322, 1325 (Me. 1996); June Roberts Agency v. Venture Properties, 676 A.2d 46, 50 (Me. 1996).

There is no dispute that VIP meets the first requirement. As for the second requirement, there is evidence in the record that the driving force behind First Tree's withholding of approval may have been to delay construction or leverage a way to

7

become involved in the project. VIP submitted the affidavit of Charlie Craig, the real estate broker representing Coastal Bank in the project with VIP. Craig stated that David Einbinder and Bob Steinberg of First Tree spoke with him regarding different ways VIP and Coastal Bank could get First Tree's approval for the project. One way was "to alter the project so that the bank building would be located on VIP's property and the parking would be on First Tree's adjacent property," another was to place "the entire Coastal Bank project on First Tree's land without including VIP in the deal." In light of this testimony, and the conclusion of Arbitrator DeTroy that First Tree unreasonably objected to the project, there is a question of fact as to whether First Tree committed intimidation through economic coercion. Furthermore, whether that coercion caused damages also presents a question of fact. The court, therefore, denies First Tree's motion to dismiss and/or for summary judgment on Count III of the complaint.

### 3. Counts IV and V

In Count IV, VIP alleges that First Tree made improvements, namely a granite curb and parking area, without the consent of VIP, and therefore breached the Agreement. In Count V, VIP alleges that these improvements unreasonably interfere with VIP's right of passage over the easement. VIP is claiming damages under both counts.

First Tree argues that the claims set forth in Counts IV and V embody the essence of the arbitration clause as the arbitrator, this court, and the Law Court have interpreted it. VIP argues that the Agreement does not grant permission for one party to make unauthorized improvements upon the other's land and only makes *prior approval* the subject of arbitration. The curbing installed by First Tree not only encompasses First Tree's property, it encroaches onto VIP's as well. According to VIP, First Tree now tries to justify its conduct by claiming VIP never asked for arbitration as to the curbing. VIP asserts, however, that it was never informed of the project or the encroachment until after work was completed and that First Tree violated this provision by constructing the curbing without first seeking VIP's permission.

The court agrees with VIP's interpretation of the arbitration clause. The language in the agreement demonstrates an intention that the arbitration clause be used for disputes occurring prior to any construction or disputes over maintenance, repair and replacement

8

of improvements. The issue presented here is whether First Tree breached the agreement by constructing improvements without seeking any permission, and doesn't fall under the language of the arbitration clause. First Tree's motion is, therefore, denied as to Counts IV and V.

THE DOCKET ENTRY IS:

> The defendant's motion for relief from attachment is denied. The defendant's motion to dismiss and/or for summary judgment is allowed as to Count II and denied as to Counts I, III, IV, and V.

> The clerk is ordered to incorporate this decision into the docket by reference.

_____
Justice, Superior Court

**DATED: March /4, 2002**

Date Filed ___01-31-00___  ___CUMBERLAND___  County  Docket No. __RE 00-015__

Action ___EASEMENTS___

V.I.P., INC.

FIRST TREE DEVELOPMENT LIMITED
LIABILITY COMPANY

vs.

Plaintiff's Attorney

ELLIOTT L. EPSTEIN, ESQ 795-5000
PHILIP M. ISAACSON, ESQ
PO BOX 891, LEWISTON, ME 04143

Defendant's Attorney

~~MICHAEL D. COOPER ESQ~~ 854-9761
~~PO BOX 529~~ W/D
~~WESTBROOK ME 04092~~
KAREN FRINK WOLF, ESQ.
EVAN SMITH, ESQ.
P.O. BOX 4726
PORTLAND, MAINE   04112-4726
207-761-0900

Date of
Entry