1998 ME 180

**Robin CLARKE**

v.

**OLSTEN CERTIFIED HEALTHCARE CORPORATION.**

Supreme Judicial Court of Maine.

Argued June 10, 1998.

Decided July 21, 1998.

---

John P. Gause (orally), Berman & Simmons, P.A., Lewiston, for plaintiff.

Fall Ferguson (orally), Pierce Atwood, Portland, for defendant.

Before WATHEN, C.J., and ROBERTS, CLIFFORD, RUDMAN, DANA, and SAUFLEY, JJ.

WATHEN, Chief Justice.

[¶ 1] Plaintiff Robin Clarke appeals from a judgment of the Superior Court (Cumberland County, *Calkins, J.*) dismissing her complaint against defendant Olsten Certified Healthcare Corporation for failure to state a claim on which relief may be granted. M.R. Civ.P. 12(b)(6). On appeal Clarke contends that the court erred in concluding that a municipal ordinance, the Portland Human Rights Act (PHRA), does not prohibit discrimination with respect to Olsten's provision of in-home health care services. Finding no error, we affirm.

[¶ 2] The facts alleged in Clarke's complaint are as follows: Olsten is a Portland-based establishment providing respite care to families with special needs children. From its administrative offices, Olsten dispatches home health aides into patients' homes. In 1995, Clarke engaged Olsten to provide in-home health care services care for her eleven-year-old son. Three different home health aides were assigned to Clarke's home between August 1995 and November 1996. In the fall of 1996, Olsten informed Clarke that it was having difficulty assigning a permanent aide because of Clarke's sexual orientation. In December, Olsten informed Clarke that it would no longer provide aides to care for her son in her home.

[¶ 3] Clarke alleged that Olsten violated the provision of the PHRA prohibiting discrimination in places of public accommodation. Olsten moved to dismiss the complaint on the basis that the PHRA does not apply to Olsten's provision of in-home services because Clarke's home is not a place of public accommodation. The court agreed, concluding that, because Olsten's services were provided in Clarke's home rather than Olsten's office, its conduct, discriminatory or not, did not fall within the purview of the PHRA. Clarke appeals.

[¶ 4] Clarke argues that the ordinance makes no distinction between services that are provided in a private home and those administered in a facility operated by the public accommodation. She contends that the definition of place of public accommodation only requires that an establishment's services be offered to the general public, not that those services actually be offered within the physical confines of a place of public accommodation. Accordingly, she argues that the court erred as a matter of law in dismissing her complaint.

[¶ 5] The parties agree that Olsten's administrative office is a place of public accommodation and that, pursuant to the PHRA, a complaint alleging the denial of services on the basis of sexual orientation in that office would survive a motion to dismiss pursuant to M.R. Civ.P. 12(b)(6). Here, however, the issue is whether the provision of services outside of the place of public accommodation, specifically the denial of health care services in the home, is subject to the PHRA.

[¶ 6] We interpret the ordinance by first looking at the plain meaning of the language to give effect to legislative intent. If the meaning of the ordinance is clear on its face, we need look no further. *Bartlett v. Town of Stonington*, 1998 ME 50, ¶ 9, 707 A.2d 389, 391. In barring discrimination on the basis of sexual orientation,[1] the PHRA

---

1. The ordinance provides in relevant part:

    **Sec. 13.5–27. Unlawful public accommodations.**

    It shall be unlawful public accommodations discrimination, in violation of this article:

    (1) For any person, being the owner, lessee, proprietor, manager, superintendent, agent or

refers to a place of public accommodation, and defines it as "any establishment which in fact caters to, or offers it [sic] goods, facilities or services to, or solicits or accepts patronage from, the general public."[2] The nonexclusive list of fifty examples included in the definition involve places of physical location without exception. The rule of construction, ("a general term followed by a list of illustrations is ordinarily assumed to embrace only concepts similar to those illustrations." *Penobscot Nation v. Stilphen,* 461 A.2d 478, 489 (Me.1983)), leads inexorably to the conclusion that the PHRA does not extend to all activities of a place of public accommodation regardless of where they are performed. *Cf. United States Jaycees v. McClure,* 305 N.W.2d 764, 768 (Minn.1981) (because the statute was amended and the Legislature deleted all references to specific physical places in favor of one broadly inclusive term, the court concluded that the statute was aimed at the entire conduct of an organization).

[¶ 7] In construing nearly identical language in the Maine Human Rights Act, we explained that "[a]n examination of the definition contained in 5 M.R.S.A. § 4553(8) (1979 & Pamph.1987) reveals an obvious emphasis on some physical place or establishment offering goods, facilities or services to the general public." *Jackson v. State,* 544 A.2d 291, 295–96 (Me.1988).

[¶ 8] Finally, Clarke's reliance on federal authority is misplaced. In *Carparts Distribution Ctr. v. Automotive Wholesaler's Ass'n of New England, Inc.,* 37 F.3d 12 (1st Cir. 1994), the court concluded that Title III of the Americans with Disabilities Act does not require that the services offered by a place of public accommodation actually be received within the physical location of the place of public accommodation. In *Carparts,* the court focused on the inclusion of "service establishments" in the ADA's definition of places of public accommodation. 42 U.S.C. § 12181(7)(F) (1995). The PHRA contains no analogue to that phrase. The Superior Court committed no error in construing the ordinance.

The entry is:

Judgment affirmed.

---

employee of any place of public accommodation, to directly or indirectly refuse, withhold from or deny to any person, on account of sexual orientation, any of the accommodations, advantages, facilities or privileges of such place of public accommodation, or for such reason in any manner to discriminate against any person in the price, terms or conditions upon which access to such accommodations, advantages, facilities and privileges may depend....
Portland, Me., Code § 13.5–27(1) (1992).

2. The definition provides:
Places of public accommodation are defined as: [a]ny establishment which in fact caters to, or offers it [sic] goods, facilities or services to, or solicits or accepts patronage from, the general public and it includes, but is not limited to: inns, tavern, roadhouses, hotels, whether conducted for the entertainment or accommodation of transient guests or of those seeking health, recreation of rest, restaurants, eating houses or any place where food is sold for consumption on the premises; buffets, saloons, barrooms or any store, park or enclosure where spirituous or malt liquors are sold, ice cream parlors, confectioneries, soda fountains and all stores where beverages of any kind are retailed for consumption on the premises; retail stores and establishments; dispensaries, clinics, hospitals, rest rooms, bath houses, barber shops, beauty parlors, theaters, motion picture houses, music halls, airdromes, roof gardens, race courses, skating rinks, amusement and recreation parks, fairs, bowling alleys, golf courses, gymnasiums, shooting galleries, billiard and pool parlors, swimming pools, seashore accommodations and boardwalks, public libraries, garages and gasoline stations; all public conveyances operated on land, water or in the air as well as the stations and terminals thereof; public halls and public elevators of buildings occupied by two (2) or more tenants or by the owner and one (1) or more tenants; and educational institutions.
*Id.* at § 13.5–22.