2004 ME 96

**Philip J. MALONSON**

v.

**TOWN OF BERWICK.**

Supreme Judicial Court of Maine.

Argued: June 9, 2004.

Decided: July 23, 2004.

---

Leah B. Rachin (orally), Durward W. Parkinson, Bergen & Parkinson, L.L.C., Kennebunk, for plaintiff.

Alan E. Shepard (orally), Shepard & Read, Kennebunk, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, RUDMAN, DANA, ALEXANDER, CALKINS, and LEVY, JJ.

DANA, J.

[¶ 1] The Town of Berwick appeals from a judgment of the Superior Court (York County, *Fritzsche, J.*) vacating the Berwick Planning Board's decision to deny Philip J. Malonson a conditional use permit to operate a home for recovering alcoholics. Because Malonson's proposal satisfies the Berwick Land Use Ordinance's definition of a "boardinghouse," we affirm the judgment.

## I. BACKGROUND

[¶ 2] In the fall of 2002, Malonson purchased a building previously operated as a nursing home intending to convert the property into a sober home for recovering alcoholics. In due course,[1] Malonson

---

1. A code enforcement officer initially granted Malonson a permit to operate a "boardinghouse" for alcohol and drug free living, but a neighbor appealed that decision to the Berwick Board of Appeals, *see* Berwick, Me., Land Use Ordinance, § 10.5 (June 8, 1993), which determined that Malonson's proposal would substantially alter the existing use of the property, and Malonson was required to submit his application to the Berwick Planning Board for a full site plan review.

sought a conditional use permit before the Berwick Planning Board.

[¶ 3] At a public hearing, Malonson testified that he proposed to provide housing for about forty male recovering alcoholics in a drug and alcohol free environment. Malonson said his staff would provide several hot meals each day, and would require residents to attend three twelve-step meetings a week. A manager would live on the premises, and one of three staff members would be in the house at all times. Malonson testified that his staff would offer no services to residents other than to provide information about local twelve-step groups. He argued that his proposal qualified as a "boardinghouse" pursuant to the definitions contained in the Ordinance. *See* Berwick, Me., Land Use Ordinance § 2.2 (June 8, 1993) (hereinafter Ordinance).

[¶ 4] After the hearing, the Board concluded that the Malonson proposal was not a "boardinghouse" as defined in the Ordinance and denied the permit. Malonson appealed that decision to the Superior Court which disagreed and remanded the case for findings on whether "the other requirements for a use permit are met." The Town filed an immediate appeal with us, which we dismissed for lack of a final judgment. *Malonson v. Town of Berwick,* 2003 ME 148, ¶ 1, 838 A.2d 338, 338. On remand, the Board found that the project otherwise qualified for a use permit,[2] and the Superior Court then declared its earlier judgment final.

## II. DISCUSSION

■■■ [¶ 5] When the Superior Court acts in an appellate capacity we review directly a local agency's decision for abuse of discretion, errors of law, and findings not supported by the evidence. *Maritime Energy v. Fund Ins. Review Bd.,* 2001 ME 45, ¶ 7, 767 A.2d 812, 814. Review of a board's interpretation of a municipal zoning ordinance is de novo. *Isis Dev. v. Town of Wells,* 2003 ME 149, ¶ 3 n. 4, 836 A.2d 1285, 1287. When the Ordinance specifically defines a term, we will not redefine it. *See Rockland Plaza Realty v. City of Rockland,* 2001 ME 81, ¶ 10, 772 A.2d 256, 260. The Ordinance provides that terms that are not specifically defined shall have "the meaning implied by their context ... or their customary dictionary definition." Ordinance § 2.1.

■■■ [¶ 6] The Ordinance allows the issuance of permits after site plan review for any property use that is either a conditional use as defined therein or is "similar to ... [such a] use."[3] It defines a "boardinghouse" as:

> Any residential structure including congregate housing where lodging and/or meals are provided for compensation for a period of at least one week, and where a family residing in the building acts as proprietor or owner. There shall be no provisions for cooking in any individual guest room.

*Id.* § 2.2.

[¶ 7] The Town first argues that Malonson's proposal is not a "boardinghouse" because the property at issue is not a "residential structure." *See id.* The Ordinance does not define the term, but the

---

2. Malonson agreed to certain conditions regarding real estate taxes, background checks on residents, limitations on residents with certain criminal records, random drug testing, assurances of employment, and prior residency in New Hampshire or Maine.

3. The Ordinance states that "[a]ny use which is not listed as, *or similar to,* a permitted use or a conditional use is prohibited." Ordinance § 6.1.2 (emphasis added). Although stated in the negative, this provision implies that any use that is similar to a defined use is permitted.

Town contends that, in context, "residential structure" is meant to describe a smaller building, more akin to a single-family home than to the larger building Malonson will utilize.

[¶ 8] The definition, however, references "[a]ny residential structure *including congregate housing.*" *Id.* (emphasis added). Congregate housing facilities can be large-scale undertakings housing more than one hundred residents, *see City of Lewiston v. Marcotte Congregate Housing, Inc.,* 673 A.2d 209, 210 (Me.1996), and their inclusion in the definition of a "boardinghouse" defeats the Town's argument that the building must be small and resemble a home. Malonson's property is a "residential structure" within the context of the definition.

[¶ 9] The Town next contends that Malonson does not propose to operate a "boardinghouse" because he does not plan to have a "family residing in the building." Ordinance § 2.2. The Town, however, concedes that the Ordinance specifically defines a family as "[o]ne or more persons occupying a premises and living as a single housekeeping unit," *id.,* but argues that we should disregard that definition because it is circular. We will not redefine the term simply because the Town now finds its definition inconvenient.

[¶ 10] Finally, the Town argues that Malonson's proposal is not a "boardinghouse" because his live-in manager will not "act[ ] as proprietor or owner" of the facility. *See id.* The Town contends that Malonson is the owner and proprietor of the sober home, and he cannot appoint a manager to supervise the operation and still call it a "boardinghouse." The Ordinance only requires the manager to *act* as the business's proprietor, however, and does not require that he actually hold an ownership interest in the enterprise. *See id.* Therefore, Malonson's manager, who will live on the premises and have full authority to supervise the operation, satisfies the Ordinance's definition.[4]

[¶ 11] Malonson's proposal meets, or is at the very least "similar to," *see id.* § 6.1.2, the plain meaning of the Ordinance's definition of a "boardinghouse."

The entry is:

Judgment affirmed.

---

4. The Town also contends that we should vacate the Superior Court's judgment because Malonson's proposal more closely resembles a "community living arrangement" than a "boardinghouse." *See* Ordinance § 2.2. A "community living arrangement" is limited to eight residents, *id.,* and, unlike a "boardinghouse," is a permitted rather than a conditional use within the residential district, *id.* § 6.2. Permitted residential uses are not subject to the detailed site plan review required of applications for a conditional use. *Id.* §§ 6.1–6.2. Malonson has characterized his proposal as a "boardinghouse," and has taken the necessary steps to apply for a conditional use permit.