2010 ME 106

**John K. RUDOLPH et al.**

v.

**Alan L. GOLICK et al.**

Supreme Judicial Court of Maine.

Submitted on Briefs: Sept. 23, 2010.

Decided: Oct. 26, 2010.

Durward W. Parkinson, Esq., Leah B. Rachin, Esq., Bergen & Parkinson, LLC, Kennebunk, ME, for Alan L. Golick and Lisa K. Thompson.

William H. Dale, Esq., Mark A. Bower, Esq., Jensen Baird Gardner & Henry, Portland, ME, for John K. Rudolph and Kathy L. Gunst.

Panel: SAUFLEY, C.J., and ALEXANDER, SILVER, MEAD, and JABAR, JJ.

ALEXANDER, J.

[¶ 1] Alan L. Golick and Lisa K. Thompson (collectively Golick) appeal from the judgment of the Superior Court (York County, *Fritzsche, J.*), vacating the South Berwick Code Enforcement Officer's decision issuing them a building permit for a horse barn and indoor riding arena. They contend that the court erred in holding that the riding arena plan fell outside the definition of a use for "animal husbandry" that is permitted by the Town's Zoning Ordinance. Because the Zoning Board of Appeals made findings of fact that are supported by the record and applied those findings reasonably to determine that the proposed facility will be engaged in "animal husbandry," a permitted use, we vacate the judgment of the Superior Court and remand for entry of a judgment affirming the decision of the Zoning Board of Appeals.

I. CASE HISTORY

[¶ 2] On July 20, 2009, Alan L. Golick and Lisa K. Thompson submitted a building permit application to South Berwick's Code Enforcement Officer (CEO). Golick's plan described a "Horse Barn/Riding Arena," which would consist of a pole barn with twelve stalls, a tack room, a grain room, and an overhead hay storage area. Golick planned to use the building to board others' horses and provide an indoor riding arena to exercise the horses. Abutting land owners John K. Rudolph and Kathy L. Gunst (collectively Rudolph) objected to Golick's request. The CEO issued a building permit to Golick. The building permit included conditions that prohibited use of the facility for horse shows or public riding lessons.

[¶ 3] Rudolph filed a timely appeal of the CEO's decision, and, on September 10, 2009, the South Berwick Zoning Board of Appeals (Board) held a public hearing concerning Golick's permit. At the hearing, the Board heard testimony from several people, including Golick, Rudolph, the CEO, and interested members of the public, including other abutters of Golick's property. On September 17, 2009, the Board issued its decision, including findings of fact and conclusions of law, denying Rudolph's appeal and affirming the CEO's grant of Golick's building permit with its limiting conditions.

[¶ 4] The Board found that Golick's proposal for the "Horse Barn/Riding Arena" was a permitted use, pursuant to South Berwick's Zoning Ordinance (Ordinance). The Golick property lies in an "R3" zone—a "transitional residential district." South Berwick, Me., Zoning Ordinance § 140–12(G) (Nov. 7, 1978). As such, one of the permitted uses is "Agriculture–Livestock," which the code defines as "Animal Husbandry." *Id.* § 140–9. The Ordinance further defines "Animal Husbandry" as the "keeping of any domesticated animals other than household pets." *Id.* The Board determined that because

horses are domesticated animals, and "[b]ecause animal husbandry is allowed in the R3 zone, the [CEO] did not make a decision clearly contrary to any specific provisions of the Ordinance when he issued the building permit."

[¶ 5] The Board also determined that since "[n]othing in the Ordinance prohibits a property owner engaged in the permitted use of animal husbandry from deriving income from that use," Golick's plan to board horses at his stables constituted a permitted use.[1] The Board further found that because the CEO's permit prohibited "horse shows or public riding lessons," Golick's permit did not authorize "commercial recreation," a prohibited use in R3 zones.

[¶ 6] Rudolph filed a timely appeal to the York County Superior Court, pursuant to M.R. Civ. P. 80B. Following a hearing, the court issued its order reversing the CEO's decision to issue the permit. The court determined, based on *Mills v. Town of Eliot*, 2008 ME 134, ¶ 13, 955 A.2d 258, 263, that the "operative decision" for review was that of the CEO, not the Board. The court found that Golick's plan more closely constituted "commercial recreation" than "animal husbandry" and thus was a prohibited activity in the R3 zone. Judgment was entered for Rudolph. Golick now appeals.

## II. LEGAL ANALYSIS

### A. Standard of Review

[¶ 7] When reviewing an appeal pursuant to Rule 80B, we review the agency's decision directly. *Logan v. City of Biddeford*, 2006 ME 102, ¶ 8, 905 A.2d 293, 295. In the present case, we review the decision of the Board rather than that of

the CEO, because, as in *Aydelott v. City of Portland*, 2010 ME 25, ¶ 9, 990 A.2d 1024, 1026, "the Board heard evidence and conducted a de novo review, and the Code did not explicitly limit that capacity, and therefore the Board acted as fact-finder and decision-maker." *See also Stewart v. Town of Sedgwick*, 2000 ME 157, ¶ 4, 757 A.2d 773, 775.

[¶ 8] We review the Board's decision "for errors of law, abuse of discretion or findings not supported by substantial evidence in the record." *Aydelott*, 2010 ME 25, ¶ 10, 990 A.2d at 1026. "The interpretation of a local ordinance is a question of law, and we review that determination de novo." *Logan*, 2006 ME 102, ¶ 8, 905 A.2d at 295. However, local characterizations or fact-findings as to what meets ordinance standards will be accorded "substantial deference." *Jordan v. City of Ellsworth*, 2003 ME 82, ¶¶ 8–9, 828 A.2d 768, 771.

[¶ 9] We examine an ordinance for its plain meaning and "construe its terms reasonably in light of the purposes and objectives of the ordinance and its general structure." *Stewart v. Town of Sedgwick*, 2002 ME 81, ¶ 6, 797 A.2d 27, 29. However, if an ordinance is clear on its face, we look no further than its plain meaning. *Clarke v. Olsten Certified Healthcare Corp.*, 1998 ME 180, ¶ 6, 714 A.2d 823, 824. Additionally, if an ordinance defines a term specifically, we will not redefine that term. *Malonson v. Town of Berwick*, 2004 ME 96, ¶ 5, 853 A.2d 224, 226.

### B. Interpretation of the Ordinance

[¶ 10] The issue for decision is whether the boarding of horses may be

---

1. In fact, many uses of animals that are other than household pets may result in generation of income.

found to fall under the Ordinance's definition of "animal husbandry" and is thus a permitted use in the R3 zone. Golick contends that in boarding horses, he will be "keeping domesticated animals," which is encompassed by a strict interpretation of the Ordinance's definition of "animal husbandry."

[¶ 11] Pursuant to the Ordinance, "R3" represents a "Transitional Residential District." South Berwick, Me., Zoning Ordinance § 140–12(G). In the R3 district, "Agriculture–Livestock" is permitted. *Id.* at Table A. "Agriculture, Livestock" is defined by the Ordinance as "Animal Husbandry," which is defined as the "keeping of any domestic animals other than household pets." *Id.* § 140–9. The Board found that Golick's proposed horse barn and riding arena fit within this definition. That finding is entitled to substantial deference.

[¶ 12] The Superior Court, however, found that the Golick's proposal was more akin to "commercial recreation" than to "animal husbandry" in determining that the proposed use was not permitted by the zoning ordinance. A use for "Commercial Recreation," defined by the Ordinance as "[a]ny commercial enterprise which receives a fee in return for the provision of some recreational activity, including but not limited to racquet clubs, health facility, amusement parks, golf courses, etc., but not including amusement centers," is not permitted in the R3 zoning district. *Id.* & Table A.

[¶ 13] Pursuant to the Ordinance, under "Construction of Language and Definitions," "all words other than those specifically defined in the chapter shall have the meanings implied by their context in the chapter or their ordinarily accepted meanings." *Id.* § 140–8. Though the Ordinance specifically defines "animal husbandry," the "ordinarily accepted meanings" of "animal husbandry" also support Golick's contention that boarding horses constitutes "animal husbandry." The *Oxford English Dictionary* defines "husbandry" as the "business or occupation of a husbandman or farmer; tillage or cultivation of the soil (including also the rearing of live stock and poultry ...)." 7 *Oxford English Dictionary* 512 (2d ed.1989). "Live stock" is defined as "[d]omestic animals generally; animals of any kind kept or dealt in for use or profit." 8 *Oxford English Dictionary* 1057 (2d ed.1989).

[¶ 14] Strictly construing the ordinance language, there exists no prohibition on earning income from the keeping of others' domesticated animals. As the Connecticut Court of Appeals has stated, "Agriculture and farming historically are commercial enterprises by which people make a living." *Borrelli v. Zoning Bd. of Appeals,* 106 Conn.App. 266, 941 A.2d 966, 973 n. 5 (2008) (holding as a matter of law that the boarding of horses constitutes "animal husbandry," a permitted agricultural use under the town's zoning scheme); *see also Steege v. Bd. of Appeals of Stow,* 26 Mass. App.Ct. 970, 527 N.E.2d 1176 (1988).

[¶ 15] The Board initially considered the fact that Golick would earn money from his horse boarding enterprise and whether that fact of profitability would foreclose Golick's venture from the categorization of "animal husbandry." The Board found that earning profit alone did not make Golick's proposal that of "commercial recreation." The Board also approved the permit restrictions that barred recreational uses by the public such as horse shows or public riding lessons. Considering the deference with which we review Board findings, we cannot conclude that these findings were clearly erroneous. The capacity to engage in agriculture involving livestock in a specified zoning district necessarily encompasses the capacity

of a landowner to derive income from the animal husbandry enterprise. Golick's proposed housing, feeding, and exercising of others' horses does not remove the proposal from the definition of "animal husbandry" simply because Golick expects compensation in return for his services.

[¶ 16] Accordingly, the Board did not err in concluding that boarding horses constitutes "animal husbandry," as "boarding horses" is synonymous with "keeping domesticated animals" and is therefore a permitted use in the Town's R3 zone pursuant to the Ordinance.

The entry is:

Judgment of the Superior Court vacated. Remanded for a judgment affirming the Zoning Board of Appeals decision of September 17, 2009.