STATE OF MAINE
CUMBERLAND, ss.

STATE OF MAINE
Cumberland.ss Clerk's Office

JAN 24 2013

RECEIVED

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-12-11
RAC - CUM - 1/24/2013

TAZEWELL MUMFORD,
      Petitioner

                                          ORDER ON
v.                                        80C PETITION

CHIEF EDWARD TOLAN,
FALMOUTH POLICE DEPARTMENT,
and TOWN OF FALMOUTH
      Respondents

FALMOUTH ROD AND GUN CLUB
      Party in Interest

Pursuant to Maine Rule of Civil Procedure 80B, Petitioner Tazewell Mumford

seeks review of a Falmouth Resident Firearms Range Permit issued by Police Chief

Edward Tolan to the Falmouth Rod and Gun Club.

BACKGROUND

The Falmouth Rod and Gun Club (the Gun Club) is a non-profit corporation

located off Gray Road in Falmouth, Maine that has operated target shooting ranges since

1949. (R. 126.) The Gun Club consists of four separate ranges, including a "rifle range,"

which is in question here. (R. 44, 57, 126.) Tazewell Mumford (Petitioner) resides at

344 Gray Road on property that sits directly behind the main backstop of the rifle range.

(R. 46-49, 94.) Petitioner was formerly an officer of the Gun Club and was a member for

about 20 years. (R. 97.)

1

In early 2011, neighbors of the Gun Club complained that bullets were entering their property because of inadequate barriers. (R. 44, 52, 82-83.) In the process of investigating the complaints, the Town discovered that the range had not been properly permitted under Falmouth's Firearms Ordinance since 1995. (R. 44.) In mid-March of 2011, the Gun Club closed the rifle range until a safety review was completed and a firearms permit issued. (R. 57.)

Authority to issue firearms permits is vested in Police Chief Edward Tolan pursuant to the Town's Firearms Ordinance. Chief Tolan delegated responsibility for investigating the safety concerns to Sergeant Frank Soule who had extensive experience with firearms-related issues in his capacity as a firearms instructor at the Maine Criminal Justice Academy. (R. 44; Findings 1.)[1] Sergeant Soule determined that each range would be permitted separately after certain safety modifications were accomplished. *Id.*

Because of his concerns, Petitioner hired an expert, Richard Whiting, to evaluate the safety of the rifle range. (R. 94.) In October 2011, Petitioner asked Chief Tolan and the Gun Club for permission to bring Mr. Whiting to the rifle range to inspect it for safety. *Id.* The Gun Club denied the request, noting that the Police Department had sole permitting authority, and "we have every confidence in the Police Department's ability to assess and formulate a safe range layout." (R. 97.) Petitioner then asked Chief Tolan to refrain from issuing a permit until the Gun Club would allow Mr. Whiting to visit the rifle range. (R. 99.) Chief Tolan refused. (R. 101.)

---

[1] The "Findings" refer to the findings of fact and conclusions of law submitted by Chief Tolan pursuant to the Court's order of July 24, 2012.

In early January 2012, Petitioner learned that the Police Department had scheduled a final inspection involving the Gun Club, Chief Tolan, and Sergeant Soule for a final inspection of the rifle range.[2] (R. 102.) In a January 5 letter, Petitioner's attorney requested that he and his client be permitted to attend the meeting pursuant to the Freedom of Access Act, 1 M.R.S.A. § 403. (R. 102.) The letter indicated that Chief Tolan had already declined the request during a phone conversation earlier that day, and asked him to reconsider. *Id.* The record does not indicate any sort of response, and, on January 9, Chief Tolan issued the permit for the rifle range. (R. 103.)

The permit was based on Sergeant Soule's findings. Sergeant Soule reported that the targets were 100 yards from the shooting stations, and that the land behind the backstop sloped upwards above the top of the berm height. (R. 45, 52.) He determined that the backstop was 23 feet high (i.e., 23 feet above the floor of the rifle range). *Id.* Sergeant Soule cited NRA guidelines, which recommend a 20-foot berm at that range, and guidelines contained in an article from the Third National Shooting Range Symposium from 1996 written by David Luke (the Luke article), which recommends a 20 to 25-foot berm. Based on this, Chief Tolan ultimately concluded that the backstop was

---

[2] There is uncertainty in the record as to when the final inspection took place. The January 5 letter indicates that an inspection was scheduled after that date, and Petitioner was told he could not attend, but the record does not indicate when or whether that actually took place. The Findings, meanwhile, mention only a December 2011 site inspection involving Chief Tolan, Sergeant Soule, and Gun Club representatives. In line with that, Petitioner states in his brief: "The last inspection, the one in December 2011 . . . is what Petitioner asked for permission to attend and was denied." (Pet. Br. 17.) In any case, the parties' correspondence does indicate that Petitioner requested to attend the final inspection and was told he could not because the Gun Club had not approved his presence there. (R. 102, 103, 105.)

3

"sufficient to prevent bullets from travelling beyond the range/berm and to protect the public from danger to life and property."[3] (Findings 3.)

On February 2, 2012, Petitioner filed an 80B appeal challenging Chief Tolan's issuance of the permit. The petition named Chief Tolan, the Falmouth Police Department, and the Town of Falmouth as Respondents, and named the Falmouth Rod and Gun Club as a party in interest. The petition included five counts: Count I alleges that the permit was issued in violation of law. Count II alleges that Chief Tolan abused his discretion by refusing to allow Mr. Whiting to examine the rifle range. Count III alleges violation of the Freedom of Access Act when Petitioner and his attorney were not permitted to attend the final inspection. Counts IV and V assert independent constitutional claims.[4]

In a July 2 order, the Court remanded the case to Chief Tolan in order for him to issue findings of fact and conclusions of law. On December 4, the Court held a hearing on the merits of Counts I-III.

THE FALMOUTH ORDINANCE

The Falmouth "Use of Firearms Ordinance" requires that target ranges be licensed annually by the Falmouth Chief of Police. In relevant part, the Ordinance states:

Target practicing is allowed, but . . . only within the confines of areas for which a permit as a range has been obtained from the chief of police and only with such types and calibers of firearms and under such conditions as shall be specifically enumerated by the chief of police in such permit . . . [I]n no event shall any such permit be valid without renewal for more than

_____

[3] Sergeant Soule also recommended that the Gun Club build a 10-foot berm to shield the entire right side of the range. (R. 45, 52.) The Gun Club later installed a 10-foot concrete wall along the right flank of the range. (Findings 2.) This is not challenged.

[4] In a March 22 order, the Court stayed Counts IV and V pending its decision on Counts I-III.

4

one (1) year. The chief of police shall refuse to issue a permit only when he finds that the issuance of such permit will pose a **danger or possibility of danger** to life or property.

Falmouth, Me., Use of Firearms Ordinance § 10-1(b)(4) (emphasis added).

DISCUSSION

I. *Counts I & II (80B)*

In an 80B appeal, the court acts in an appellate capacity and may overturn a municipal decision if it was the product of "error[] of law, abuse of discretion or findings not supported by substantial evidence in the record." *Rudolph v. Golick,* 2010 ME 106, ¶ 8, 8 A.3d 684.

Count I alleges that the permit was issued in violation of law. The Firearms Ordinance provides that a permit shall issue unless doing so would "pose a danger or possibility of danger to life or property." § 10-1(b)(4). With respect to the backstop, Sergeant Soule considered the facts that the current backstop is 23-feet tall, the range is 100 yards in length, and the land behind the range slopes upward. Chief Tolan also considered the "Specific Rifle Range Rules" imposed on users of the rifle range. Considering these facts in light of the NRA guidelines and Luke article, Chief Tolan concluded that the backstop was "sufficient to protect the public from danger to life and property." (Findings 3.)

"The interpretation of a local ordinance is a question of law, and we review that determination de novo." *Rudolph,* 2010 ME 106, ¶ 8, 8 A.3d 684. However, the court accords substantial deference to "local characterizations or fact-findings as to what meets ordinance standards." *Id.* The court must uphold an agency's, or in this case, the police department's, interpretation of an ordinance it administers unless it "plainly compel[s] a

5

contrary result." *Rangeley Crossroads Coal. v. Land Use Regulation Comm'n*, 2008 ME 115, ¶ 10, 955 A.2d 223.

The Firearms Ordinance applicable here does not include any guidance as to what constitutes "danger or possibility of danger." It is reasonable in these circumstances for the issuing body to rely on expert authority, such as NRA guidelines and the Luke article, for the purpose of assessing danger under the ordinance. Applying the deferential 80B standard to these facts, Chief Tolan's findings are sound and his interpretation of the ordinance does not plainly compel a contrary result.

Count II alleges that the permit's issuance was an abuse of discretion because Petitioner and his expert, Mr. Whiting, were denied access to inspect the Gun Club. Petitioner contends that he was "frozen out of the process by which the permit was issued, in essence treated as an adversary in the process." (Pet. Br. 15.) Petitioner maintains that Chief Tolan should have refused to issue the permit until the Gun Club allowed Mr. Whiting to inspect the premises. *Id.*

According to the Law Court:

> An abuse of discretion may be found where an appellant demonstrates that the decisionmaker exceeded the bounds of the reasonable choices available to it, considering the facts and circumstances of the particular case and governing law. It is not sufficient to demonstrate that, on the facts of the case, the decisionmaker could have made choices more acceptable to the appellant . . . .

*Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

In this case, Chief Tolan delegated responsibility to Sergeant Soule to inspect the rifle range and make recommendations to enhance safety. (Findings 1.) Given Sergeant Soule's credentials, Chief Tolan was satisfied that he was fit for the task. *Id.* Petitioner cites no authority for the proposition that he, as the interested party, had a legal right to

6

have his expert investigate the premises. The Court is likewise unaware of any legal requirement that a permitting body must allow all available expert authorities to investigate and give input during the permitting process. Thus, Chief Tolan did not exceed the bounds of reasonable choices available by limiting the investigation as he did.

II. *Count III (Freedom of Access)*

Petitioner contends that the final inspection constituted a "public proceeding" under the Freedom of Access Act, and, thus, he should have been permitted to attend. 1 M.R.S.A. § 403. Assuming that FOAA applied to the final inspection, which the Court is not prepared to hold,[5] the remedy Petitioner seeks – invalidation of the permit – is unavailable.

The court may invalidate an *official action* if it determines that the action was approved illegally in executive session. 1 M.R.S.A. § 409(2); *see Marxsen v. Bd. of Dirs., M.S.A.D. #5,* 591 A.2d 867, 870 (Me. 1991) ("Official action taken at a public proceeding conducted in violation of the Act is voidable by the court."). In this case, there is no evidence that the permit was decided upon or issued at the final inspection itself. Thus, there was no official action subject to invalidation. Civil fines are also available under 1 M.R.S.A. § 410, but only the Attorney General's office may pursue these. *Lewiston Daily Sun v. Sch. Admin.*

---

[5] Pursuant to FOAA, "all public proceedings must be open to the public and any person must be permitted to attend a public proceeding." 1 M.R.S.A. § 403. "Public proceedings" are defined as "the transactions of any functions affecting any or all citizens of the State by . . . [a]ny board, commission, agency or authority of any . . . municipality . . . ." *Id.* § 402(2)(C). Although Chief Tolan was arguably an authority of a municipality, the Court is not prepared to hold that a site inspection by an individual with permitting power, rather than a deliberative body composed of multiple individuals, is covered by FOAA. The fact that Sergeant Soule, who advised Chief Tolan but did not actually make the decision, was present does not alter the fact that there was no deliberative body involved.

7

*Dist. #43*, 1999 ME 143, ¶ 11, 738 A.2d 1239. While the FOAA remedies are not exclusive of any other remedy provided by law, § 409(3), Petitioner has not raised any alternative remedy at law.

The entry will be:

As to Counts I-II, the Court AFFIRMS the permit. As to Count III, the Court DENIES Petitioner's FOAA claim.

January 24, 2013
DATE

SUPERIOR COURT JUSTICE

8

Date Filed _2-2-12_     CUMBERLAND     Docket No. _AP-12-11_

County

Action _____80B APPEAL_____

TAZEWELL MUMFORD

CHIEF EDWARD TOLIN
FALMOUTH POLICE DEPARTMENT
TOWN OF FALMOUTH
FALMOUTH ROD AND GUN CLUB

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| RUFUS BROWN ESQ<br>PO BOX 7530<br>PORTLAND ME 04112 | William Plouffe Esq (all except Falmouth R<br>and Gun Club)<br><br>Daniel Cummings Esq. (Falmouth Rod and<br>Gun Club) |

Date of
Entry