STATE OF MAINE                                      SUPERIOR COURT
CUMBERLAND, ss                                      CIVIL ACTION
                                                    Docket No. AP-15-09

21 SEABRAN, LLC,

                    Petitioner              STATE OF MAINE
                                     Cumberland ss Clerk's Office ORDER ON PETITIONER'S
v.                                      JAN 2 6 2016    RULE 80B APPEAL

TOWN OF NAPLES,                         RECEIVED

                    Respondent

        Before the court is petitioner 21 Seabran, LLC's Rule 80B appeal challenging respondent

Town of Naples' denial of its application for two permits necessary to renovate a garage and the

subsequent denial of petitioner's appeal to the Board of Appeals (Board). For the following

reasons, the court affirms the Board's decision.

## I.   FACTS

        Petitioner is a Maine limited liability company with Anne Snodgrass as its sole member.

Petitioner owns property located at 21 Seabran Lane in Naples, Maine (the property). (Rule 80B

record at 1) (hereinafter "R. ___.") The property consists of 170,319 square feet and

approximately 200 feet of frontage on the shore of Brandy Pond. (R. 3, 103.) It is located in a

shoreland area as defined by Maine's Mandatory Shoreland Zoning Act.[1] (R. 103.) The property

is improved by a three-bedroom single-family residence, which is seasonally occupied by Anne

and Francis Snodgrass, and a detached 30' by 40' garage. (R. 101-103.) The Snodgrasses wish to

renovate the garage to provide accommodations for visitors. (R. 101.) The renovation would

involve constructing three bedrooms, two bathrooms, one sitting room, and a washer/dryer on the

second floor of the garage, as well as a wastewater disposal system. (R. 4, 104.)

_____

[1] Maine's Mandatory Shoreland Zoning Act classifies all "areas within 250 feet of the normal high-water
line of any great pond . . . ." as "shoreland areas." 38 M.R.S. § 435 (2014).

1

On September 25, 2014, Mills Whitaker Architects submitted on behalf of petitioner applications for a building permit and a subsurface wastewater disposal system permit. (R. 10-11, 103-104.) The design flow specified in the wastewater permit was 270 gallons per day (gpd). (R. 10.) Both applications referred to the renovated garage as a "bunkhouse." (R. 10-11, 103-104.) Maine's Subsurface Wastewater Disposal Rules define "bunkhouse" as a detached bedroom with no plumbing and a design flow of 20 gpd per bed. (R. 61-62.) On October 21, 2014, the Code Enforcement Officer (CEO) for the Town of Naples (Town) informed petitioner that she was taking no action on the applications because the renovated garage did not meet this definition. (R. 11.) On October 24, 2014, Mills Whitaker Architects submitted amended applications that omitted the term "bunkhouse" but were otherwise identical to the original applications. (R. 1-9, 104.)

On November 17, 2014, the CEO denied petitioner's amended applications because she determined that the renovated garage was a "residential dwelling unit" and the property lacked sufficient lot area and shore frontage to serve two residential dwelling units. (R. 12-13.) On December 15, 2014, petitioner appealed to the Board, which denied the appeal on February 24, 2015. (R. 14-17, 101-102.) The Board issued a decision on March 3, 2015 that affirmed the CEO's denial on the ground that the property lacked sufficient shore frontage. (R. 103-106.) Petitioner appealed to this court on April 7, 2015. A hearing was held on November 30, 2015.

## II. DISCUSSION

### A. Standard of Review

The party challenging the decision of a municipal board has the burden of demonstrating an error of law, an abuse of discretion, or findings not supported by substantial evidence in the record. *Aydelott v. City of Portland*, 2010 ME 25, ¶ 10, 990 A.2d 1024 (citation omitted). The

2

court reviews the interpretation of municipal ordinances de novo. *Nugent v. Town of Camden*, 1998 ME 92, ¶ 7, 710 A.2d 245. "However, local characterizations or fact-findings as to what meets ordinance standards will be accorded 'substantial deference.'" *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8 A.3d 684 (quoting *Jordan v. City of Ellsworth*, 2003 ME 82, ¶ 9, 828 A.2d 768). "[T]he words used in an ordinance should be given their plain and ordinary meaning." *Merrill v. Town of Durham*, 2007 ME 50, ¶ 14, 918 A.2d 1203. The court may "affirm, reverse, or modify the decision under review or may remand the case . . . ." M.R. Civ. P. 80B(c).

B. Wastewater Permit

The Town argues that the permit would violate both state and local law because the renovated garage is a residential dwelling unit and the property must therefore comply with more restrictive frontage requirements. Because the property does not comply with these requirements, the Town argues that the CEO properly denied the permit. Petitioner argues that the permit would comply with state and local law because the renovated garage is an accessory structure, not a residential dwelling unit, and therefore the more restrictive requirements do not apply.

1. State Law

The relevant state laws are the Subsurface Wastewater Disposal Rules, the Minimum Lot Size Statute, and the Minimum Lot Size Rules. The property and the renovated garage comply with the Subsurface Wastewater Disposal Rules[2] and the Minimum Lot Size Statute.[3] The

---

[2] The Subsurface Wastewater Disposal Rules require that single-family dwelling units with three bedrooms have 270 gpd and define "single-family dwelling unit" broadly as "[a] structure or realty improvement intended for single-family use." (R. 61-63; 10-144 C.M.R. ch. 241, §§ 4(E), 13 (2011).) The renovated garage fits the definition because it is a structure intended for single-family use, and it complies with the statute because the design flow in the application is 270 gpd. (R. 10.)

[3] The Minimum Lot Size Statute provides that no person shall:

> Dispose of waste from any single family residential unit by means of subsurface waste disposal unless such lot of land on which such single family residential unit is located contains at least 20,000 square feet; and if the lot abuts a lake, pond, stream, river or tidal area, it shall further have a minimum frontage of 100 feet on such body of water.

3

dispute centers on whether the property complies with the Minimum Lot Size Rules. These rules generally mirror the Minimum Lot Size Statute but impose the additional requirement that the property comply with any greater frontage requirements under local zoning:

> A lot on which a single-family dwelling unit is located shall contain at least 20,000 square feet. If the lot abuts a lake, pond, stream, river, or tidal area, it shall have a minimum frontage of 100 feet on the water body *and any greater frontage required by local zoning.*

(R. 59; 10-144 C.M.R. ch. 243, § 1001.1.1 (2005) (emphasis added).) To determine whether the property complies with the Minimum Lot Size Rules, the court must therefore determine whether it complies with any greater frontage required by the Town's zoning laws.

2. Local Law

The Town's relevant zoning law is the Shoreland Zoning Ordinance (SZO). The SZO requires 200 feet of shore frontage per residential dwelling unit. (R. 122; SZO § 15(A) (June 4, 2014).)[4] The SZO does not impose this greater frontage requirement on accessory structures. (*See* R. 122; SZO § 15(A) (omitting accessory structures from minimum lot standards chart).) The SZO refers to the Town's Definitional Ordinance for definitions, which defines "residential dwelling unit"[5] as:

---

12 M.R.S. § 4807-A(1) (2014). The statute defines "single family residential unit" as "any structure of any kind, including mobile homes, used or designed to house a single family, and shall include those structures used permanently and seasonally." 12 M.R.S. § 4807(4) (2014). The renovated garage fits the definition because it will seasonally house a single family, and the property complies with the statute because it contains more than 20,000 square feet and has frontage of more than 100 feet. (R. 3, 103-04.) The statute does not expressly require that the square footage and frontage requirements be doubled if two residential units will be located on one property, but even if it does require this, the property would still comply with the statute because it contains more than 40,000 square feet and has 200 feet of frontage.

[4] (*See also* R. 123; SZO § 15(A)(4) ("If more than one residential dwelling unit, principal governmental, institutional, commercial or industrial structure or use, or combination thereof, is constructed or established on a single parcel, all dimensional requirements shall be met for each additional dwelling unit, principal structure, or use.").)

[5] The exact language in the ordinance is "Residential (per dwelling unit)" and the parties sometimes use the term "dwelling" instead of "residential dwelling unit." The Definitional Ordinance defines "dwelling" as "[a] room or group of rooms designed and equipped exclusively for use as permanent, seasonal or temporary living quarters for only one family, including provisions for living, cooking and eating." (R.

4

> A room or group of rooms designed and equipped exclusively for use as permanent, seasonal, or temporary living quarters for only one family at a time, and containing cooking, sleeping and toilet facilities.

(R. 177; Naples, Me., Definitional Ordinance (June 16, 2010).) It is undisputed that the renovated garage would contain a group of rooms designed for use as seasonal or temporary living quarters for one family at a time, and that it would contain sleeping and toilet facilities. However, the parties dispute whether the Town may classify the garage as a residential dwelling unit despite the fact that the applications do not include plans for cooking facilities.

The Town argues that it is allowed to apply a "common sense approach" in classifying the garage, and that, for all intents and purposes, the garage will be used as a residential dwelling unit. Petitioner counters that the Town must apply the definition literally and cannot classify the garage as a residential dwelling unit if it does not meet all aspects of that definition. In *Hopkinson v. Town of China*, the Law Court upheld a Board of Appeals' characterization of construction on the second floor of a garage as "residential occupancy," precluding the renovated garage from meeting the definition of "accessory structure." 615 A.2d 1166, 1168 (Me. 1992). That construction involved a bedroom, bathroom, and "a set of kitchen cabinets installed in an area where a kitchen might be installed." *Id.* at 1167. In *Wickenden v. Luboshutz*, the Law Court upheld a Board of Appeals' determination that a building that lacked a kitchen with "customary domestic appliances" was a "dwelling," finding it significant that the building had an independent water supply, septic system, electricity, refrigeration, and parking area. 401 A.2d 995, 996 (Me. 1979); *see also Goldman v. Town of Lovell*, 592 A.2d 165, 169 (Me. 1991) (upholding a Board of Appeals' classification of a detached garage improved with a bedroom, bathroom, kitchen sink, refrigerator, and separate water pump and heater as a "dwelling unit").

---

167; Naples, Me., Definitional Ordinance (June 16, 2010).) The dispute is the same under either definition because both refer to cooking amenities.

The renovated garage is similar to the proposed structures in these cases: it will consist of three bedrooms, two bathrooms, one sitting room, and a washer/dryer, as well as a wastewater disposal system. Although the ordinances in *Hopkinson*, *Wickenden*, and *Goldman* did not include cooking facilities in their definitions, the existence of cooking facilities was only one factor among many that the Board considered in making its determination. For example, the Board also considered a variety of undisputed facts that clearly meet the definition, such as the fact that the renovated garage would contain sleeping and toilet facilities and would be temporary living quarters for one family. Given the deferential standard under which the court reviews the Board's fact-findings, the court upholds the Board's determination that the renovated garage is a residential dwelling unit.[6] *See Rudolph*, 2010 ME 106, ¶ 8, 8 A.3d 684.

As a result, the property must meet the minimum shore frontage requirement under the SZO. (R. 122; SZO § 15(A).) The minimum shore frontage for the property is 400 feet because the SZO requires 200 feet per residential dwelling unit, and the property would contain two residential dwelling units with the renovated garage. There is no dispute that the property contains less than 400 feet of shore frontage. (R. 3, 106.) As a result, the permit would violate both the SZO and the Minimum Lot Rules, and the Board did not err in affirming the CEO's denial of the subsurface wastewater disposal system permit.

C. Building Permit

Petitioner may not renovate the garage if the renovated garage requires a subsurface wastewater disposal system permit and petitioner cannot obtain one. (*See* R. 152; SZO § 16(B)

---

[6] Petitioner's argument that the renovated garage is an "accessory structure" is not to the contrary. The Definitional Ordinance defines that term as "[a] use or structure, which is incidental and subordinate to the principal use or structure." (R. 163; Naples, Me., Definitional Ordinance.) The Board did not address this argument, but its implicit rejection by classifying the renovated garage as a residential dwelling unit is entitled to the same substantial deference.

6

(forbidding any activity that requires a permit and is not authorized by one).) Therefore, the Board did not err in affirming the CEO's denial of the building permit.

## III. CONCLUSION

The court hereby ORDERS that petitioner's Rule 80B appeal is DENIED and the Board's decision is AFFIRMED.

Pursuant to M.R. Civ. P. 79(a), the clerk is directed to incorporate this Order by reference in the docket.

Dated: _January 25, 2016_

Roland Cole
Chief Justice, Superior Court

7

Date Filed: 04/07/2015     CUMBERLAND          Docket No. AP15-0009
                                COUNTY

Action: 80B APPEAL


21 SEABRAN, LLC                  TOWN OF NAPLES
                          vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DAVID A. GOLDMAN, ESQ<br>PAUL F. DRISCOLL, ESQ<br>NORMAN, HANSON, & DETROY, LLC.<br>P.O. BOX 4600<br>PORTLAND, ME. 04112 | SALLY DAGGETT ESQ<br>PO BOX 4510<br>PORTLAND ME 04112 |