STATE OF MAINE
PENOBSCOT, ss.

SUPERIOR COURT
CIVIL ACTION
Docket No.: AP-2017-03

JR REDEMPTION CENTER INC.,

Plaintiff,

v.

**ORDER ON PLAINTIFFS' 80B
APPEAL**

CITY OF BREWER,

Defendant.

Presently before the Court is Plaintiff JR Redemption Center, Inc.'s M.R. Civ. P. 80B

Appeal, filed on January 12, 2017. Plaintiff filed its Brief on May 1, 2017. Defendant, City of

Brewer, filed its Opposition to Plaintiff's Brief on May 22, 2017. Plaintiff filed its Reply

Brief on June 2, 2017. After careful consideration of the parties' respective filings, the

Court reverses the judgment of the City of Brewer Board of Appeals and remands the case

for further proceedings consistent with the opinions expressed below.

## I.   BACKGROUND

The relevant facts underlying the present dispute can be briefly summarized as

follows. In 1985, Plaintiff began conducting business as a redemption center at 151 South

Main Street in Brewer, Maine. The building Plaintiff used to operate the redemption center

burned down on or around 1992 or 1993. In 1993, Defendant sent a letter to Plaintiff

stating that Plaintiff had previously agreed to remove certain trailers located on the

property and that Plaintiff had not yet satisfied the agreement.

No further action took place, and in 2011, Defendant attempted to have Plaintiff

remove the trailers, but that action was delayed as Plaintiff and Defendant endeavored to

come to an agreement. In 2016, the Code Enforcement Officer for Defendant issued

Plaintiff a notice of violation alleging three specific violations. Plaintiff appealed the decision of the Code Enforcement Officer to the Board of Appeals, which held a hearing on December 7, 2016. At the hearing, the Board voted, five to zero, in favor of upholding the decision of the Code Enforcement Officer. This appeal concerns only one on the violations: that J R altered or expanded an originally approved use without approval of the city. The Board later issued its written decision, confirming the vote in favor of the Code Enforcement Officer, which specifically found that:

2. The Appellant presented the testimony of manager Ben Gould, but his testimony was not helpful or convincing on the key facts in issue, some of which related to events occurring a number of years ago. Although we understand that one of the long-time owners, Mrs. Mona Gould, Ben's mother, has died, Mr. Salls is alive, involved in the business and knowing that the historical uses and understandings would be an issue, he elected not to be present. We draw no adverse inference from his absence but it may be a part of the reason why Appellant failed to meet its burden.

3. The City presented documentary evidence, including a letter from then Code Enforcement Officer, Donald Grant, to Mr. Salls, dated September 8, 1993. That letter expressly refers to an assurance given by the business and Mr. Salls that the storage trailers would be promptly removed. Had the business disagreed with the order to remove the trailers, it could have resorted to the Board of Appeals process. There is no evidence it ever did so and we must therefore conclude that the letter of September 8, 1993 is final and binding on the issue of lack of right to have storage trailers.

4. Although the case is circumstantial, the most likely explanation for the presence of storage trailers on the property is the fire around 1992 which destroyed the wooden building and effectively put JR Redemption out of business. The City most likely allowed the trailers on a temporary basis (despite a 1992 ordinance prohibiting outside storage at redemption centers), to keep the business going during the rebuild on the express understanding, referred to in Mr. Grant's letter, that they would be removed when the rebuild was complete and the certificate of occupancy for the new building issued. Removal never happened and there was in fact an increase in the amount of unregistered trailers over time.

5. No written site plan from that time frame was found or presented to the Board, but consistent with the more informal manner things were done up to thirty years ago, it is clear that the property owner had either presented a written document

2

which has been misplaced, or had entered into a binding agreement with the City as to the nature of the use. That use did not include unregistered storage trailers.

6. While the City has let this matter persist for twenty-five years, the Appellant gained no legal or grandfathered rights, since the use of storage trailers for outside storage was barred by the 1992 ordinance, or otherwise foreclosed by the failure to appeal the September 1993 order from the CEO. While the business existed in some form going back to 1985, the Board was not convinced based on the evidence presented that box storage trailers were a part of the business at that time. In that respect he [sic] Board considered the testimony of Mr. Dearborn and also considered the photograph from 1991 which the Appellant introduced, the only one dating back prior to the 1992 ordinance. The next photograph in the sequence, from 1997, shows both the new building and the presence of trailers which can't be seen and appreciated in the 1991 photograph. The Board also noted that the old wooden building appeared to have significantly more floor space than the building constructed after the fire. As noted above, the Board also gave no weight to the testimony of Mr. Ben Gould on this point, given his age at the time, and lack of knowledge on those points.

(R. 34-36.) Plaintiff timely filed this appeal.

## II.    STANDARD OF REVIEW

In an M.R. Civ. P. 80B appeal, the Court reviews a municipality's decision for abuse of discretion, errors of law, or factual findings unsupported by substantial evidence in the record. *Wyman v. Town of Phippsburg,* 2009 ME 77, ¶ 8, 976 A.2d 985. A party seeking to vacate a state or local agency decision bears the burden of persuasion on appeal. *Bizier v. Town of Turner,* 2011 ME 116, ¶ 8, 32 A.3d 1048. Questions of law are reviewed de novo standard, *Gensheimer v. Town of Phippsburg,* 2005 ME 22, ¶ 16, 868 A.2d 161, while questions of fact are reviewed under the clear error standard. *Green v. Comm'r of the Dept. of Mental Health, Mental Retardation & Substance Abuse Servs.,* 2001 ME 86, ¶ 9, 776 A.2d 612.

Local ordinances are reviewed de novo as a question of law. *Aydelott v. City of Portland,* 2010 ME 25, ¶ 10, 990 A.2d 1024. The court will "examine the plain meaning of the language of the ordinance, and [] construe its terms reasonably in light of the purposes

3

and objectives of the ordinance and its general structure." *Stewart v. Town of Sedgwick*,

2002 ME 81. "Local characterizations or fact-findings as to what meets ordinance

standards will be accorded '"substantial deference."' *Rudolph v. Golick*, 2010 ME 106, ¶ 8, 8

A.3d 684.

Review of an agencies discretionary decision involves the resolution of three issues:

> (1) are factual findings, if any, supported by the record according to the clear error standard;
> (2) did the court understand the law applicable to its exercise of discretion; and
> (3) given all the facts and applying the appropriate law, was the court's weighing of the applicable facts and choices within the bounds of reasonableness.

*Pettinelli v. Yost*, 2007 ME 121, ¶ 11, 930 A.2d 1074.

## III.   DISCUSSION

Plaintiff claims that the Board's decision was arbitrary and capricious and based on

errors of law and that its factual findings are not supported by the record. Specifically,

Plaintiff takes issue with the Board's conclusions concerning the existence or content of an

originally approved use and whether J R expanded or altered that use. Plaintiff also alleges

that its use of box trailers on the property is a legally nonconforming right. In order to

analyze these issues it is important to evaluate a 1993 letter and interpret a 1992 Town

Ordinance. The Court will discuss both documents in turn.

A.   The 1993 Letter

Although J. R. received a certificate of occupancy from the City in 1985 and again in

1993, no document containing an approved site plan for this property was presented at

hearing and the CEO testified that he didn't think there ever was one. With no site plan

detailing and limiting the scope of the permitted use, it becomes difficult to prove that a

permitted use was altered or expanded. The Board relied heavily on a letter dated

4

September 8, 1993 from former Code Enforcement Officer, Donald Grant, to the owner of Plaintiff, Loring Salls, which stated "you assured this office that you would have the trailers removed and the lot cleaned up by the end of the month." He also wrote "Please be advised said property must be cleaned up and trailers removed from the property within ten (10) days from the receipt of this letter to avoid further action by this office." (R. 24.) The Board inferred from the content of this letter that the City allowed trailers on the property temporarily after the fire despite a 1992 ordinance prohibiting outside storage at redemption centers. The Board also found that "it is clear that the property owner had either presented a written document which has been misplaced, or had entered into a binding agreement with the City as to the nature of the use." (R. 34.) The Board also found that this letter constituted a final, appealable-determination that Plaintiff did not have the right to have storage trailers on the property.

1. Evidence of an Approved Plan

At the appeal hearing, the Board members considered the testimony of Mr. Gould, J R's representative, that after the fire they had about 15 trailers on the property until a replacement structure could be completed and that they retained the trailers after completion. Aerial photos admitted at the hearing corroborate the existence of several trailers on the property prior to the fire in 1992, and additional trailers, placed in a different location, from 1997 to present. They also considered the letter and concluded that an approved plan existed and that it barred the use of trailers on the property for storage. This conclusion is not supported by the evidence because it is doubtful that a certificate of occupancy would be issued to a nonconforming property owner, which J R would have been at the time of issuance. Furthermore, the content of the letter tells us nothing about

5

the specifics of an approved plan and is as consistent with a voluntary gesture to remove trailers as it is to an involuntary removal that was forced by an approved plan. The Court is aware of the deference it must afford the fact finder but finds here that the leap of fact-finding faith involved is too great to be ratified on appeal.

2. Final and Binding Effect

Plaintiff argues that the letter was insufficient to create a final, appealable-determination of whether Plaintiff could possess trailers on the property. Prior to 2013, "appeals of notices of violation were not justiciable because a notice merely provided an interpretation of an ordinance; unless and until a municipality acted to enforce the decision in some meaningful way, appeals from notices of violation were 'dismissed as calling for an advisory opinion.'" *Paradis v. Town of Peru*, 2015 ME 54, 115 A.3d 610. This changed in 2013 with the enactment of 30-A M.R.S. § 2691 which provided that the failure to appeal a notice of violation had preclusive effect.

In this case, the 1993 Letter stated that Plaintiff must remove the trailers within ten days or face further action by Defendant. First, it is doubtful that it serves as a notice that could be appealed because it indicates that further action may be taken if J R doesn't comply. If this were the final word from the City on this issue, there would be no need to speak of further action. There is no record that Defendant engaged in any further action, or attempted to enforce its decision in a meaningful way. Furthermore, the Letter does not state that Plaintiff had the right to appeal the decision or that the decision would become final and binding if Plaintiff did not appeal. The Board concluded that the Letter was final and binding, but its reasoning as to why the Letter was a final decision was not adequately articulated in the Record. For these reasons, the 1993 Letter is properly viewed as nothing

6

more than a notice of violation, and without evidence of further action by the town, was not an appealable decision. Therefore, and contrary to the Board's conclusion, the Letter was not final and binding on the issue of whether Plaintiff could store trailers at the Premises.

B.   Interpretation of the 1992 Ordinance

Plaintiff also argues that because the use of the storage trailers on the property has been continuous and not in violation of the 1992 ordinance, it is a nonconforming use and not subject to the changed requirements of the 2001 ordinance. The central issue here is whether the pre 2001 use of the trailers violated the 1992 ordinance.

The Board stated that Plaintiff's use of trailers at the redemption center property was barred under the 1992 Ordinance, which provided in pertinent part:

> "BUILDING" is a structure with exterior walls or fire walls built or occupied as a shelter or roofed enclosure for persons, animals, or property of any kind used for residential, business, mercantile, storage, commercial, industrial, institutional, assembly, educational, or recreational purposes.
> . . .
> "Outside storage" shall mean storage outside of a building.

(R. 26.) The Board determined that Plaintiff's trailers constituted outside storage, but did not adequately provide any rationale for its conclusion. It its Brief, the City simply states that "outdoor storage meant everything not within a building and thus storage in a trailer, particularly an unregistered trailer, was 'outdoor storage'." (Brewer Br. 6.) The complication with the City's position is that a trailer has exterior walls and is a roofed enclosure. Furthermore, Plaintiff's particular trailers were also occupied for business and storage purposes. For these reasons, Plaintiff's use of trailers, from the plain face of the statute, come under the definition of a building under the 1992 Ordinance.

Even if the ordinance were considered to be ambiguous, the result would not be different. Defendant's "characterizations or fact-findings as to what meets ordinance

7

standards will be accorded "'substantial deference.'" *Rudolph*, 2010 ME 106, ¶ 8, 8 A.3d 684. Nevertheless, looking at the previous Ordinance, the definition of "BUILDING" explicitly excluded "trailers." (R. 26.) The previous Ordinance was amended in 1992, and removed "trailer" from the list of exclusions to the definition of "BUILDING." (R. 26.) The Town's removal of "trailer" from the list of exclusions as to what constitutes a "BUILDING," evidences the City's intent that trailers, after 1992, be included within the definition of a "BUILDING." This finding is also supported by an internal email from Defendant on July 1, 2009, where City employee, Tina Kroll, conducted research into the issue. (R. 13.) Ms. Kroll's email states that after the 1992 Ordinance was enacted, the Planning Board held discussions with respect to the necessity of box trailer legislation. (R. 13.) Furthermore, the finding that "outside storage" truly meant storage that exposed what was stored to the elements and not storage that was sheltered by something like a trailer is reinforced by the additional requirement that "outside storage is permitted provided that paper shall be stored in covered containers and cardboard shall be bailed. All outside storage shall be maintained in a neat, clean, and orderly condition and in a manner which will not create a risk to public health." (R. 27). It would be unnecessary to express this condition if outside storage included a covered box trailer.

The fact that the Planning Board, which was delegated the responsibility of evaluating the presence of box trailers, discussed possible trailer legislation after the enactment of the 1992 Ordinance supports the fact that trailers were not excluded from the definition of a building, because it would be unnecessary for the City to enact a trailer ordinance when trailers were already prohibited.

8

For these reasons, the extrinsic evidence surrounding the 1992 Ordinance supported a finding that trailers were meant to be included within the definition of a building, and is sufficient evidence to overcome the substantial deference shown to the Board's finding of fact on this issue. J. R. has a legally non-conforming right to use box trailers for storage at the redemption facility.

## IV.    CONCLUSION

As mentioned above, the Board's factual findings were not supported by substantial evidence in the Record; the Board did not evidence an understanding of the law applicable to its decision; and given all the facts and applying the appropriate law, the Board's decision exceeded the scope of its discretion.

The Entry is:

1)    Petitioner's M.R. Civ. P. 80B Appeal is **GRANTED**.

2)    The Decision of the Board of Appeals is **REVERSED** and the case is **REMANDED** to the Board of Appeals for further proceedings consistent with the opinions expressed herein.

3)    This Order shall be incorporated into the docket by reference pursuant to M.R. Civ. P. 79.

Dated: September7, 2017

William R. Anderson
Justice, Maine Superior Court

ORDER/JUDGMENT ENTERED IN THE
COURT DOCKET ON: 9-12-17

9